Chief Judge Fuld.
In 1966, the Legislature repealed this State’s ancient divorce laws — which for almost 200 years had sanctioned divorce solely for adultery—and enacted the Divorce Reform Law (L. 1966, ch. 254, eff. Sept. 1, 1967) authorizing divorce on other grounds (Domestic Relations Law, § 170). In addition to four grounds based on ‘ ‘ fault, ’ ’ new section 170 of the Domestic Relations Law specified two ‘ ‘ nonfault * ’ grounds predicated on a couple’s living apart for a period of two years after the granting of a separation judgment or decree (subd. [5]) or the execution of a written separation agreement *33 (subd. [6]).[1] In the two cases before ns, we are called upon to decide whether subdivision (5) is available where the decree was rendered prior to the enactment of the new statute and in favor of the spouse opposing the divorce.
In the Gleason case, the plaintiff brought his action in October of 1968; he alleges that he and his wife have been living apart for more than two years, pursuant to a separation decree obtained by Mrs. Gleason in June of 1954, and that he has complied with all of its terms. The defendant moved to dismiss the complaint for failure to state a cause of action (OPLE 3211, 3212), contending that section 170 has only prospective operation and that, if applied ‘ ‘ retroactively ’ ’, it would be unconstitutional. Supreme Court Justice Kokn", sitting, at Special Term in New York County, denied the motion; he decided that subdivision (5) was retroactive and rejected the defendant’s argument that such an application of the statute was unconstitutional (59 Mise 2d 96).[2]
The Goldstein case involves the same fact pattern as Gleason v. Gleason—a pre-1966 separation decree in favor of the wife and the institution of suit by the husband based on their living *34 apart for more than two years. Here, too, the defendant moved to dismiss the complaint. In this instance, however, the motion was granted; Supreme Court Justice Fbank, before whom the matter came, decided that subdivision (5) was not to be applied retroactively.
The appeals in both the Gleason and Goldstein cases were decided by .the Appellate Division for the First Department at the same time and in one opinion (32 A D 2d 402). That court, by a 3 to 2 vote, reversed Special Term’s order and dismissed the complaint in Gleason and affirmed in Goldstein. Holding that subdivision (5) did not apply to pre-existing judgments of separation, the majority wrote .that “ retroactive application would confer authority upon the courts to dissolve a marriage without the consent of a nonguilty party ’ ’ and that it is “ questionable whether the State may constitutionally do this ” (32 A D 2d, at pp. 407-408). The dissenting justices, on the other hand, concluded that the Legislature intended subdivision (5) to apply to previously granted decrees (pp. 410-414) and, in the course of their opinion, noted that the Second Department had unanimously reached the same conclusion. (See Schacht v. Schacht, 32 A D 2d 201; see, also, Kaplan v. Kaplan, 31 A D 2d 247, 250.)
We agree with the dissenters in the First Department and the unanimous Appellate Division for the Second Department that the Legislature intended that subdivision (5) of section 170 of the Domestic Relations Law should be applied “ retroactively ”, in the sense of encompassing pre-1966 decrees, and that, as so applied, it offends against neither due process, the equal protection of the law nor any other constitutional provision.
Before considering the question of retroactivity and the problems of constitutionality thus posed, we deem it important to emphasize that nothing turns upon the fact that, in each of these particular cases, the divorce is being sought by the so-called “ guilty ” spouse, that is, the party who was unsuccessful in the prior separation suit.
The concept of divorce on the ground—specified in subdivision (5)—■ that husband and wife have lived apart for two years or more pursuant to a decree of separation is self-evident. *35 Equally clear is the public policy which underlies that concept. If a reconciliation has not been effected within two years following a judicial separation, the Legislature has concluded, and reasonably so, that the parties are irreconcilable and the marriage dead. Since, as is apparent, the legislative design was to render this a basis for divorce, it follows, .that it makes no difference whether it is the “ innocent ” or “ guilty ” party who seeks to convert the judicial separation into a final divorce. Moreover, the deliberate failure of the legislators to provide defenses to the new grounds further evinces and confirms their intention of abandoning the traditional fault approach to divorce and permitting the termination of marriages even where both parties are at fault — except in cases of adultery (Domestic Relations Law, § 171). In a word, if there is no longer a viable marriage, the question of fault, of “guilt” or “innocence ”, is irrelevant.[3]
The vital and operative fact is that the parties have actually lived apart for two years after September 1, 1966,[4] pursuant to a separation decree. The only condition imposed is that the plaintiff furnish 1 ‘ satisfactory proof ’ ’ that all the terms and conditions of that decree have been substantially performed. The real purpose of this nonfault provision was, as noted, to sanction divorce on grounds unrelated to misconduct. The decree is simply intended as evidence of the authenticity and reality of the separation. Implicit in the statutory scheme is the legislative recognition that it is socially and morally undesirable to compel couples to a dead marriage to retain an illusory and deceptive status and that the best interests not only of the parties but of society itself will be furthered by enabling them “ to extricate themselves from a perpetual state of marital limbo.” (Adelman v. Adelman, 58 Misc 2d 803, 805; see, also, *36 Wadlington, Divorce Without Fault Without Perjury, 52 Va. L. Rev. 32, 81-87.)
As indicated, it is our view that subdivision (5) of section 170 is to be construed to apply to decrees rendered before 1966. In reaching this conclusion, we have not failed to consider the principle that the law generally favors the prospective interpretation of a statute. It “ takes a clear expression of the legislative purpose”, this court has written, “to justify a retroactive application” (Jacobus v. Colgate, 217 N. Y. 235, 240) but that purpose is here unequivocally established. not only by the literal language of the statute — as the Appellate Division itself observed (32 A D 2d, at p. 404) —not only by its context but by its legislative history as well. (See, e.g., Garzo v. Maid of the Mist, 303 N. Y. 516, 522; Matter of Mullane v. McKenzie, 269 N. Y. 369, 373.)* ***[5]
When the Divorce Reform Law was originally enacted in April of 1966, its concluding section (L. 1966, ch. 254, § 15), after reciting that it was to become effective on September 1, 1967, went on to declare explicitly that the two-year period of living apart specified in subdivisions (5) and (6) “shall not be computed to include any period prior to September first, nineteen hundred sixty-six ”, a year before the statute’s effective date. Here was unmistakable demonstration that those subdivisions were not to be given wholly prospective application. If the Legislature had intended that the decree must be one granted subsequent to the effective date of the statute — September 1, 1967 — it could not logically have pre *37 scribed that the period of living apart might begin one year prior to that effective date.[6]
Obviously, if .the parties may compute the period of living apart commencing a year before the operative date of section 170, then, the statute must contemplate that it could be pursuant to a decree .rendered even earlier. Reasonably and sensibly read, the statute, as a whole, points the construction that all that has to be proved is that there is some kind of formal document of separation—in this case, a judicial decree—that the plaintiff has complied with its terms and that the parties have lived apart pursuant to the decree for two years after September 1, 1966.[7] The function of the decree, as we have already noted, is merely to authenticate the fact of separation. Consequently, the living apart ground became operable after September 1, 1968, and entitled a plaintiff to a divorce regardless of the date of the decree. Indeed, since .the Legislature was intent on providing nonfault grounds for divorce and sanctioning divorce decrees where the marriage was dead— as attested by the specified two-year separation—“ it would be anomalous ”, two knowledgeable commentators in the field *38 of marriage and divorce have observed, to permit judicial termination of .marriages which became dead after September 1, 1966, but not those whose demise preceded that date.” (Foster and Freed, The Divorce Reform Law [1969], p. 18.) In other words, the legislative purpose of effectively reforming the State’s divorce law would, to a large extent, be defeated by the restrictive judicial construction of subdivision (5) urged upon us by the defendants.
In any event, if there could have been any doubt that sub-, division (5), as originally enacted, was to be applied retroactively, that doubt was completely dispelled by the action taken by the Legislature in 1968. In that year, a bill was introduced which would have made both subdivision (5) and subdivision (6) expressly nonretroactive. More specifically, the bill recited—with respect to subdivision (5)—that the living apart had to be pursuant to a decree “granted on or after September one, nineteen hundred sixty-six ” and—as to subdivision (6)—'pursuant to an agreement “subscribed and acknowledged on or after August first, mneteen hundred sixty-six” (Sen. Intro. No. 2256, Assem. Intro. No. 2942). The Legislature, however, deleted the italicized clause from proposed subdivision (5) but retained it in subdivision (6), expressly making the latter provision nonretroactive (Assem. No. 2942-A). Thus, the Legislature deliberately and carefully differentiated between the two subdivisions, amending subdivision (6) alone to limit its applicability to .separation agreements executed after August 1, 1966 (L. 1968, ch. 700).[8] In the light of the deletion of the provision relating to subdivision (5), “it is clear that it was understood that section 170 (5) had received retroversion” and was to be given “retroactive application.” (Foster and Freed, The Conversion Ground for Divorce in New York, N. Y. L. J., April 30, 1969, p. 4, col. 2.)
The Joint Legislative Committee on Matrimonial and Family Laws—which had produced the original Wilson-Sutton divorce law bill (see 1966 Report, March 31, 1966; N. Y. Legis. Doc., 1966, No. 8, p. 85 et seq.) —voiced the same opinion. After observing that, “ [a]s originally introduced, this bill would also *39 have provided that the separation ground for divorce based upon a judgment or decree of separation must have been one granted on or after September 1, 1966 ” and that 11 this limitation was deleted”, the committee categorically declared (McKinney’s 1968 Session Laws of N. Y., vol. 2, p. 2308):
‘ ‘ The bill as it now stands demonstrates a legislative intent to construe that provision [subd. (5)] as retroactive.”[9]
As we have already pointed out, implicit in the statutory scheme is the recognition that it is socially and morally undesirable to compel a couple whose marriage is dead to remain subject to its bonds. If subdivision (5) were not to be applied retroactively, the legislative purpose would be seriously thwarted in the many cases in which spouses have been living separate and apart for more than two years pursuant .to pre1966 separation decrees, and the defendant in the separation action .seeks a divorce. An insistence upon a fault-oriented ground of divorce, where the marriage, under the Legislature’s present policy, ought .to be dissolved, would for years perpetuate two of the chief evils the new divorce law was designed to eliminate — collusive or fraud-ridden divorce actions in this State and the continued pursuit of out-of-state divorces based upon spurious residence and baseless claims. If, .therefore, the legislative aims and purposes are to be achieved, the statute *40 must be interpreted as making divorce available on living apart grounds pursuant to pre-1966 decrees just as it would be if the decree were obtained later and regardless of the “guilt” or “ innocence ” of the party seeking it.
This brings us to the constitutional arguments against retroactive application of subdivision (5). The principal contention is that a wife who prevailed in the separation action, having had no warning that .the separation decree granted to her might later furnish basis or ground for divorce by the “ guilty ” husband, would be deprived of valuable rights without notice. More particularly, it is claimed that those rights—social security and pension rights, inheritance rights and a right in the marital status itself—are “vested” and, by that token, protected by the Due Process and Equal Protection Clauses of both the Federal and New York Constitutions. These contentions lack substance.
A vested right, it has been said, is an “ £ immediate fixed right of present or future enjoyment ’ ”. (Pearsall v. Great Northern Ry., 161 U. S. 646, 673.) Marital rights, however, have always been treated as inchoate or contingent and may be taken away by legislation before they vest. (See, e.g., Maynard v. Hill, 125 U. S. 190, 216; Randall v. Kreiger, 23 Wall. [90 U. S.] 137, 148.) In discussing the right of dower, the Supreme Court almost a century ago wrote in the Randall case (23 Wall. [90 U. S.], at p. 148):
“ During the life of the husband the right [dower] is a mere expectancy or possibility. In that condition of things, the law-making power may deal with it as may be deemed proper. It is not a natural right. It is wholly given by law, and the power that gave it may increase, diminish, or otherwise alter it, or wholly take it away. It is upon the same footing with the expectancy of heirs, apparent or presumptive, before the death of the ancestor. Until that event occurs the law of descent and distribution may be moulded according to the will of the legislature.”
By a parity of reasoning, a wife’s prospective right of inheritance is inchoate and expectant, not becoming vested until the death of her husband. (See, e.g., Simons v. Miami Beach Nat. *41 Bank, 381 U. S. 81, 85; Matter of McGlone, 284 N. Y. 527, 533, affd. sub nom. Irving Trust Co. v. Day, 314 U. S. 556.) “ Since rights of descent and distribution of a decedent’s estate are created by the law of the State,” we wrote in McGlone (284 N. Y., at p. 533), “ the State may change or take away such rights though it may not take away property which had vested by virtue of such rights.” And, certainly, a spouse has no vested rights in the marital status (cf. Rosenbaum v. Rosenbaum, 309 N. Y. 371, 377; Baumann v. Baumann, 250 N. Y. 382, 385-389) or in social security or pension benefits.
In short, the State, having the power directly to limit or abolish rights of succession to the property of a living person, may undoubtedly do so indirectly by providing a new ground for divorce. Since, then, no vested rights of the defendants have been adversely affected, there has been no denial of due process.
Likewise without merit is the defendants’ equal protection argument that the Legislature, by making subdivision (5) retroactive and subdivision (6) prospective, unreasonably differentiated between a party to a pre-1966 separation decree and a party to a pre-1966 separation agreement. The short answer is that there is no denial of equal protection of the laws if the differentiation made rests upon some rational consideration and is not palpably arbitrary. “ [T]he standards of equal protection ”, we recently declared, “ are met if a classification, or a distinction among classes, has some reasonable basis.” (Matter of Bauch v. City of New York, 21 N Y 2d 599, 607; see, also, Bucho Holding Co. v. State Rent Comm., 11 N Y 2d 469, 477.) The differences between separation decrees and separation agreements are numerous and fully justify the distinction which has been made. We need but mention that one is imposed by judicial fiat, whereas the other is the product of a voluntary undertaking; that one requires the intervention of the State, the other does not; that one is subject to modification, the other not; that the legal rights and remedies as to enforcement of the decree differ substantially from those available for breach of the agreement. Consequently, since there is reasonable basis for the legislative classification, the courts will uphold it even if they were to disagree with its wisdom.
*42 JSTor is there substance to the further contention that the statute unconstitutionally impairs contract rights. ‘ ‘ Marriage is not a contract ”, we wrote in Fearon v. Treanor (272 N. Y. 268, 272, app. dsmd. 301 U. S. 667), “within the meaning of the provision of the Federal Constitution which prohibits the impairment by the States of the obligation of contracts.” This being so, “.rights growing out of the [marriage] relationship may be modified or abolished by the Legislature without violating the provisions of the Federal or State Constitution which forbid the taking of life, liberty or property without due process of law.” (Hanfgarn v. Mark, 274 N. Y. 22, 25, app. dsmd. 302 U. S. 641; see Maynard v. Hill, 125 U. S. 190, 210, supra; Trustees of Dartmouth Coll. v. Woodward, 4 Wheat. [17 U. S.] 518, 629; see, also, 2 Cooley, Constitutional Limitations [8th ed. 1927], pp. 751-752.) And, in the Dartmouth College case, Chief Justice Marshall, addressing himself to the subject, stated (17 U. S., at p. 629): “ The provision of the constitution never has been understood to embrace other contracts, than those which respect property, or some object of value, and confer rights which may be asserted in a court of justice. It never has been understood to restrict the general right of the legislature to legislate on the subject of divorces.”
Before bringing this opinion to a close, we note that, when confronted with constitutional challenges such as those now urged upon us, the high courts of a number of jurisdictions have upheld the retroactive application of similarly constructed legislation permitting divorce either where the parties had been living apart pursuant to an “old” separation decree (see, e.g., Stallings v. Stallings, 177 La. 488; Hagen v. Hagen, 205 Va. 791) or where .they had simply been living apart for a specified period. (See, e.g., Tipping v. Tipping, 82 F. 2d 828; Fuqua v. Fuqua, 268 Ala. 127; Hurry v. Hurry, 144 La. 877; Campbell v. Campbell, 174 Md. 229; McGinley v. McCinley, 295 S. W. 2d 913 [Tex.]. See, also, Ann., Divorce Statute—Retrospective Effect, 23 ALR 3d 626, 633-636.) “ It has been held by the highest authority ”, wrote the Federal Court of Appeals for the District of Columbia, “ that marriage is an institution of society, creating a status which may be regulated and controlled by public law; that legislation affecting the institution or an *43 nulling .the relation between the parties is not within the prohibition of the Constitution of the United States against the impairment of contracts, or against ex post facto laws.” (Tipping v. Tipping, 82 F. 2d 828, 830, supra.)
It is perfectly obvious—as the facts in the cases before us establish—that “ denial of legal recognition to de facto dissolution will not revive or reinstate the marriage as a functioning status.” (1 Foster and Freed, Law and the Family [1969 Cum. Supp.], § 6:3-d, p. 30.) If the loss of the wife’s prospective right of inheritance is thought to occasion economic inequity when the husband converts the separation decree into a divorce, redress or alleviation must be left to the Legislature. That body could, if so minded, amend the law so as to grant discretion to the courts to award her an amount in lieu of such prospective inheritance right. Be that as it may, the simple fact is that the larger public interest demonstrated by the present legislation requires that there be a legal termination of dead marriages.
It has been well said that “ [a] giant step has been taken in the Divorce Reform Law to bring New York into the twentieth century.” (Gershenson, The Divorce Reform Law, N. Y. L. J., July 26, 1967, p. 4, col. 6.) The courts should not dilute its effectiveness by denying it the full scope intended for it. It applies retroactively, as we have declared, to permit divorce on the strength of a separation decree rendered before the new statute was enacted and, as so construed, it does not violate any constitutional provision.
In each case, the order appealed from should be reversed, without costs, and the case remitted to the Supreme Court, New York County, for further proceedings in accordance with this opinion.
Judges Bergan, Beeitel, Jasen and Gibson concur with Chief Judge Fuld ; Judges Burke and Scileppi dissent and vote to affirm on the prevailing and concurring opinions at the Appellate Division.
In each case: Order reversed, etc.

. Subdivision (5) of section 170, insofar as pertinent, reads as follows:
“An action for divorce may be maintained by a husband or wife to procure a judgment divorcing the parties and dissolving the marriage on any of the following grounds:
# * *
“ (5) The husband and wife have lived apart pursuant to a decree or judgment of separation for a period of two years after the granting of such decree or judgment, and satisfactory proof has been submitted by the plaintiff that he or she has substantially performed all the terms and conditions of such decree or judgment.”
The succeeding subdivision, which deals with “living apart” pursuant to a separation agreement, recites:
“ (6) The husband and wife have lived separate and apart pursuant to a written agreement of separation, subscribed and acknowledged on or after April twenty-seventh, nineteen hundred sixty-six by the parties thereto in the form required to entitle a deed to be recorded, for a period of two years after the execution of such agreement and satisfactory proof has been submitted by the plaintiff that he or she has substantially performed all the terms and conditions of such agreement.”

. We note, however, that no final disposition was made in plaintiff husband’s favor because of a factual dispute as to his compliance with the terms of the separation decree.

. Indeed, an unsuccessful attempt was made during the 1969 legislative session to amend the statute to make the conversion ground provided by subdivision (5) available only to the “ innocent ” party. (Assem. Intro. No. 1252; see Association of Bar of City of N. Y., Committee on State Legislation, Bulletin No. 5, March 10, 1969, pp. 231-233.)

. The statute requires that the two years of “ living apart ” date from September 1, 1966 (L. 1966, eh. 254, § 15).

:. It is worthy of note that the overwhelming weight of authority supports retroactive application of legislative creation or amendment of divorce grounds, unless the statutory language employed precludes such a construction. (See, e.g., Parks v. Parks, 116 F. 2d 556; Tipping v. Tipping, 82 F. 2d 828; Fuqua v. Fuqua, 268 Ala. 127; Schuster v. Schuster, 42 Ariz. 190; White v. White, 196 Ark. 29; Stallings v. Stallings, 177 La. 488; Campbell v. Campbell, 174 Md. 229; Gerdts v. Gerdts, 196 Minn. 599; State ex rel. Progress v. Court, 53 Nev. 386; Cooke v. Cooke, 164 N. C. 272; McGinley v. McGinley, 295 S. W. 2d 913 [Tex.]; Hagen v. Hagen, 205 Va. 791; see, also, Note, Retroactive Application of New Grounds for Divorce under § 170 Domestic Relations Law, 17 Buff. L. Rev. 902, 907-908; Ann., Divorce Statute — Retrospective Effect, 23 ALR 3d 626, 630-632; but see, contra, Jarvis v. Jarvis, 3 Edw. Ch. 462 [1841]; Sherburne v. Sherburne, 6 Me. 210 [1829]; Scott v. Scott, 6 Ohio 534 [1834]; Pierce v. Pierce, 107 Wash. 125 [1919].)

. Furthermore, although another section of the Divorce Reform Law (L. 1966, eh. 254, § 7) —■ comprising section 210 of the Domestic Relations Law — provided that “ [n] o action for divorce * * * may be maintained on a ground which arose more than five years before the date of the commencement of that action for divorce ”, it expressly exempted subdivision (5) from this five-year period of limitation. Had the Legislature, when it decided not to place a “time limitation” on a subdivision (5) suit, wished to bar reliance on a pre-1966 decree, it would unquestionably have so provided in this section.

. Senator John H. Hughes, Chairman of the Judiciary Committee and one of the sponsors of the compromise bill finally enacted, stated, during debate on the Senate floor, that he had “legal advice” that it would be unconstitutional to provide for retroactive application of the living apart grounds and that, accordingly, the new law could not be applied to “old” separation decrees. (See Foster and Freed, The Divorce Reform Law [1969], p. 17.) However, the Chief Counsel to the Legislative Committee on Matrimonial and Family Laws, after noting that “the legislature must have intended that decrees obtained prior to 'September 1, 1967 qualify as the basis for such a divorce,” went on to say that “ [d]ecrees obtained after September 1, 1966 would appear to be qualified and it may be argued that decrees obtained prior to that date would be similarly satisfactory.” (Commentary by Philip H. Schaeffer, Chief Counsel to Joint Legislative Committee on Matrimonial and Family Laws, Appendix A, Hendler, Matrimonial Practice in the New York Supreme Court [PLI, 1966], p. 203.)

. The August 1st date was later changed to April 27, 1966 (L. 1969, ch. 964).

. Contrary to the contention advanced, there can he no doubt concerning the propriety of considering the Legislature’s action in 1968 in construing subdivision (5), even though that provision was originally enacted in 1966. It is sufficient to note, as the court did in Schacht v. Schacht (32 A D 2d 201, 203, supra), that, when the 'Legislature, modifying the proposed bill, chose to amend both subdivisions so as to prohibit the retroactive operation only of subdivision (6), and made both amendments effective immediately (L. 1968, ch. 700, § 3), “it clearly evinced its intent that subdivision (5), as re-enacted in 1968, be construed as retroactive.” (Emphasis in original.) So clear an expression of legislative intent, the Schacht ¡court continued (p. 203), “compels a holding * * * that subdivision (5) is retroactive and applicable to a living-apart pursuant to a separation decree obtained prior to the Divorce Reform Law.” (See, also, RKO-Keith-Orpheum Theatres v. City of New York, 308 N. Y. 493, 501; Matter of Chatlos v. McGoldrick, 302 N. Y. 380, 387-388; cf. 1 Mertens, Law of Federal Income Taxation, §§ 3.28, 3.29.)