Louis B. Heller, J.
In this action for divorce by plaintiff husband, the defendant wife seeks an order pursuant to CPLR 3211 (subd [a], par [7]) dismissing the complaint for failure to state a cause of action. The key issue presented herein is whether an order of protection, issued by the Family Court, which was simultaneously coupled with an order of support, may, as a matter of law, be the basis of a no-fault divorce pursuant to subdivision (5) of section 170 of the Domestic Relations Law.
The factual background is not in dispute and is as follows:
The parties were married in the State of New York in 1952. There are two children of the marriage: Paula, who is now over the age of 21 years and Glenda, age 14. There has been a history of marital strife since the inception of the marriage. In or about 1967 plaintiff husband left defendant and went to Mexico where he obtained a unilateral divorce. On the strength of this divorce plaintiff remarried several years ago and is still living with his new "wife.” Plaintiff is not relying upon this divorce in the instant proceeding and it is not involved herein.
It further appears, regressing several years, that plaintiff failed to support defendant and the children, as a consequence of which defendant applied for public assistance. She also brought a support proceeding in the Family Court. On March 5, 1968 an order of support was issued by the Family Court which directed plaintiff to pay $70 per week for the support of the defendant and their children, and at the same time, a mutual order of protection was issued which directed that "Both parties are to remain away from the home or place of business of the other,” and that "the directions herein shall be and remain in force and effect for a period of twelve (12) months from the date hereof.”
In accordance with the directive in the mutual order of protection, plaintiff and defendant have continuously lived separate and apart since March 5, 1968. Based upon this order and the actual separation of the parties for approximately seven years, plaintiff instituted the action at bar for divorce, in accordance with subdivision (5) of section 170 of the Domestic Relations Law, which, insofar as pertinent, reads as follows:
"An action for divorce may be maintained by a husband or wife to procure a judgment divorcing the parties and dissolving the marriage on any of the following grounds: * * *
*823 "(5) The husband and wife have lived apart pursuant to a decree or judgment of separation for a period of one or more years after the granting of such decree or judgment, and satisfactory proof has been submitted by the plaintiff that he or she has substantially performed all the terms and conditions of such decree or judgment.”
Defendant, in support of her motion to dismiss the complaint for insufficiency, contends: (1) that a Family Court order is not the equivalent of a decree or judgment of legal separation because an order of the Family Court cannot affect the marital status of the parties; (2) that the Legislature, in enacting subdivision (5), never contemplated conversion divorces based upon orders of the Family Court; and (3) the fact that a marriage may be dead does not, in and of itself, create a ground for divorce. Defendant argues that to permit a divorce on the grounds alleged by plaintiff would be tantamount to usurping a legislative function, and would be contrary to public policy in that the spouse would be encouraged to starve the other into a divorce or become a public charge.
The plaintiff, in opposing the motion argues: (1) that the mutual order of protection satisfies the requirements of subdivision (5) of section 170 of the Domestic Relations Law; (2) that an order of protection is proof of living apart; and (3) that the cause of action, based upon such order, is consistent with the legislative intent when it enacted subdivision (5) of section 170.
The attorneys are to be commended for their excellent presentation with respect to the issues.
Upon an exhaustive analysis of the issues and the history of the new divorce laws, this court is of the opinion that the plaintiff should prevail on this motion. Beyond peradventure, the marriage of the parties herein is irretrievably broken and has been a dead marriage for many years. The question then presents itself: how long must the corpse remain uninterred?
For an answer, we must go back and analyze the intent of the Legislature in enacting the new reform divorce laws in 1966. Prior thereto, the New York divorce law was one of the most stringent in the world, with no way out but adultery. Collusion and connivance were rampant. The theory formerly was that the marriage contract was like no other contract; that the family was the linchpin of society and that the family tie must not be broken at the mere whim of the parties or on their private view of their own personal convenience. Now *824 there are six grounds for divorce, subdivisions (5) and (6) of section 170 being nonfault. With respect to the new divorce laws, the Court of Appeals in the keystone case, Gleason v Gleason (26 NY2d 28, 32) had this to say: "In 1966, the Legislature repealed this State’s ancient divorce laws — which for almost 200 years had sanctioned divorce solely for adultery —and enacted the Divorce Reform Law (L 1966, ch 254, eff Sept. 1, 1967) authorizing divorce on other grounds (Domestic Relations Law, § 170). In addition to four grounds based on "fault,” new section 170 of the Domestic Relations Law specified two "nonfault” grounds predicated on a couple’s living apart for a period of two years [now one year] after the granting of a separation judgment or decree (subd [5]) or the execution of a written separation agreement (subd [6]).” And on pages 35-36: "The real purpose of this nonfault provision was, as noted, to sanction divorce on grounds unrelated to misconduct. The decree is simply intended as evidence of the authenticity and reality of the separation. Implicit in the statutory scheme is the legislative recognition that it is socially and morally undesirable to compel couples to a dead marriage to retain an illusory and deceptive status and that the best interests not only of the parties but of society itself will be furthered by enabling them 'to extricate themselves from a perpetual state of marital limbo.’ (Adelman v Adelman, 58 Mise 2d 803, 805; see, also, Wadlington, Divorce Without Fault Without Perjury, 52 Va L Rev 32, 81-87).” (Emphasis added.)
From 1956 through 1966 the Joint Legislative Committee on Matrimonial and Family Laws of the State of New York (the Committee) struggled with problems of revising divorce laws enacted in ancient times. (1966 Report of the Joint Legislative Committee on Matrimonial and Family Laws, NY Legis Doc, 1966, No. 8.) The 1965 resolution re-establishing the Committee expressed the Legislature’s prime concern with "widespread fraud, collusion and perjury in matrimonial actions and proceedings.” (NY Legis Doc, 1966, No. 8, p 9.) The goal of the Legislature was to prevent fraud, collusion and perjury.
Initially, the Committee proposed that an action for divorce may be maintained where: "(5) The husband and wife voluntarily have lived apart for a continuous period of two or more years because of estrangement due to marital difficulties.” (NY Legis Doc, 1966, No. 8, p 85.) The nonfault subdivisions (5) and (6), as finally enacted, expanded upon this proposal by
*825 calling for documentary evidence of the separation to prevent fraud and collusion (Gleason, supra; Markowitz v Markowitz, 77 Misc 2d 589).
In the case at bar, in the opinion of this court, the Family Court mutual order of protection (coupled with the order of support), constitutes sufficient predicate for a conversion divorce pursuant to subdivision (5) of section 170 of the Domestic Relations Law. This, it appears, is consonant with the spirit and intent of the Legislature in enacting nonfault divorce where the parties live separate and apart for more than one year. For all practical purposes, there is no significant difference between the Family Court order directing the parties to live apart and a separation judgment. To rule otherwise would emphasize form over substance and place undue stress upon the instrument, the indicia of proof of the separation, rather than the fact of separation. As a matter of fact, the Family Court orders herein contain all the operative features of a separation judgment, viz.: (1) that the parties live separate and apart; (2) provision for support; and (3) provision for child custody and visitation. Moreover, and to a certain extent, a protection order issued in the Family Court has more thrust than a separation judgment. The violation of the protection order could result in a statutory penalty of imprisonment up to six months. (Family Ct Act, § 846.)
In the final analysis, what the Legislature sought to prevent when enacting nonfault divorce laws, was fraud and collusion. Therein lies the reason for documentary evidence of living apart.
In the case at bar, what better proof of "living apart” could be presented than the protection order issued by the Family Court ordering the parties to live separate and apart, buttressed by the admission of the parties themselves that they did just that. In the circumstances, there can be no basis for any claim of fraud and collusion.
With respect to defendant’s claim that plaintiff failed to comply with the support provisions of the Family Court order, this is a factual issue which must be determined at the time of trial and is irrelevant to the issues on this motion. Nor does the court find any substance to defendant’s argument that wives who are required to seek Family Court orders of support for welfare eligibility will be in danger of having conversion divorces thrust upon them. There is no provision in the law that requires wives seeking public assistance to seek orders of *826 protection in the Family Court when seeking an order of support.
. In sum, taking the complaint at its face value, in the opinion of the court, it sufficiently states a cause of action, and, accordingly, defendant’s motion to dismiss it for insufficiency is denied.
By way of obiter dictum, and relative to the divorce laws as they presently exist, this court would like to venture the opinion that the time is now ripe for the Legislature to give serious consideration to the enactment of complete no-fault divorce. Having presided over hundreds, possibly thousands of contested and uncontested matrimonial actions since the enactment of the new reform divorce laws in 1966, this court has concluded that when the legislators attempted to revise our divorce laws because of fraud, collusion and perjury, which were so prevalent, they gave us a law that fell far short of their aim. It is common knowledge that the enactment of the new divorce laws emerged only after frantic pulling and hauling by the legislators who were caught in a whipsaw action due to the numerous groups which opposed it. They tried to make it palatable to all groups.
This court can now state from practical experience that the object of eliminating fraud, collusion and perjury in matrimonial cases has not been attained. As a matter of fact, these elements have now crept into the new grounds for divorce. As an example, take the ground of cruelty. In skillful hands, fictitious "cruelty” is just as easy to simulate as fictitious "adultery” formerly was. Yet, if the evidence is complete on its face, a divorce decree cannot be denied. The court is in no position to investigate suspect cases. It all boils down to the fact that fraud, collusion, etc., still exists for the simple reason that if people want a divorce, they will get it somehow, even if they have to fit the facts to the law.
As a matter of fact, there is nothing really new in complete no-fault divorce. California was the first State to enact it in 1970. At present, 13 States have complete no-fault, and it is significant that 45 out of 50 States now have some form of no-fault divorce. It is quite evident that no-fault is not something that’s coming in the future; it is already here. In its present state, it is only a question of degree; whether to go all the way and eliminate collusion, etc., once and for all, or to stop short and permit the elements we tried to eliminate to seep back into the proceedings.
*827 In an excellent article by Virginia Lee Warren in the New York Times on March 19, 1975, entitled Taking some of the pain out of divorce, "No-fault” is a growing reality, she states: "Aside from today’s general permissive attitude, what has helped to propel most of the United States into divorce liberalization and all within little more than five years — is the ever increasing number of marriage failures; two out of every five new ones at the latest count. With that much of the population going through such an experience, many people have moved to end the hostility, bitterness, acrimony, guilt, humiliation and sometimes perjury, that too often have been a part of it.”
Under complete no-fault divorce, so long as one of the parties considers the marriage irretrievably broken, a divorce can follow, without the necessity of making any disparaging charges against the other, thus eliminating the hostility, bitterness, etc., which so often characterize trials at the present time. Neither spouse is consideréd the guilty party because there is no such thing in no-fault as a guilty party. The irretrievable breakdown is considered to be in the marriage, not in the parties. Moreover, one of the most important features of no-fault is that it makes it impossible for a husband or a wife to force a mate to hang on to a marriage when either one considers it dead. Such a thing as a "life sentence” to a dead marriage should not be foisted on society.
In the final analysis, we must face facts and realize that the old order is gone forever and has been replaced with a new order, with different norms and standards. Dissolution of a marriage should not involve a war between the parties in a courtroom, but rather the even-handed resolution of family problems in which guilt is irrelevant. Solving the family problems is the important thing; not binding people to a dead marriage.
Of course, in humanizing the divorce laws by enacting complete nonfault, such vital interests as fair and equitable distribution of property, the welfare of the children and all other facets attendant upon a marriage dissolution would have to be given due consideration and proper provision made therefor through legislation.
The time has come for this State to come to grips with reality and enact complete no-fault divorce, thereby putting *828 an end to any and all fraud and collusion in matrimonial proceedings.