OPINION OF THE COURT
Jacqueline W. Silbermann, J.
In this matrimonial action, the plaintiff wife (hereinafter wife) moves to amend the complaint. Defendant husband (hereinafter husband) opposes the motion.
This court held a trial on the grounds for divorce. At the conclusion of the trial, the court granted husband’s motion to dismiss the complaint for divorce on the grounds of cruel and inhuman treatment and set a briefing schedule with respect to the wife’s application to amend the complaint.
The issue presented is an interesting one and appears to be of first impression: Does a shareholder’s agreement entered into by the parties constitute sufficient evidence of a written agreement of separation to support a divorce under Domestic Relations Law § 170 (6)?
The agreement at issue is a document entitled "scan shareholder’s agreement” dated January 26, 1994. The agreement was signed by the parties and witnessed by their accountant, Alan Dornfeld. The agreement begins by stating "[t]his is an agreement between Jessica Rose (Jessica) and Aaron Rose (Aaron), each 50% shareholders of Scan Enterprises Inc.” The parties lived apart prior to the signing of the agreement and continue to live apart. Although they have consistently resided in different spaces, they engaged in sexual relations on multiple occasions after signing the shareholder’s agreement.
The wife states that certain language in the agreement evidences the fact that the parties were living separate and apart. She points to the language in the agreement which states "Aaron will continue occupying the 3rd floor duplex and the fifth floor * * * Jessica will continue occupying the 4th floor”. The wife contends that the agreement confirms that the parties occupied separate spaces and that they agreed to live apart in the future as the agreement assigned rental values to the parties’ respective spaces.
The wife further asserts that in order for an agreement to be considered a separation agreement it need not contain a comprehensive scheme to settle all the issues of the marriage. *564 She looks to the language of Christian v Christian (42 NY2d 63, 69 [1977]) where the Court of Appeals found that "the function of the document is 'merely to authenticate the fact of separation’ Lastly, wife claims that "mere cohabitation” following the execution of an agreement does not in and of itself destroy the validity of the agreement.
The husband contends that there is no merit to the proposed amendment and that the motion should be denied as the agreement is not a separation agreement, but is only what it states on its face, a shareholder’s agreement. According to husband, the agreement does not provide in its body that the parties are to separate; it does not provide for the distribution of any marital property or address separate property issues; and it does not address the issue of support.
Husband further argues that the agreement was neither acknowledged nor proven as required by Domestic Relations Law § 170 (6). He claims that it was not acknowledged or proven in the form required to entitle a deed to be recorded.
Lastly, husband also points to Christian v Christian (supra), where the Court found that the legislative intent was to provide no-fault grounds for divorce where marriages are dead. Husband states that the agreement contains no indicia that the parties acknowledged their marriage was dead. Indeed, he claims that the agreement was executed while the parties were in marriage counseling seeking to restore the marital relationship and that it does not show that the parties had the slightest understanding or intention of altering their marriage relationship.
Domestic Relations Law § 170 (5) and (6) provide for the divorce of parties on the grounds of their living separate and apart pursuant to a separation decree or judgment. Domestic Relations Law § 170 (6) provides that a ground for divorce exists where: "[t]he husband and wife have lived separate and apart pursuant to a written agreement of separation, subscribed by the parties thereto and acknowledged or proved in the form entitled to require a deed to be recorded, for a period of one or more years after the execution of such agreement”.
While the parties focus on the issue of whether the agreement falls within Domestic Relations Law § 170 (6), a threshold inquiry arises as to the attempted acknowledgement. An agreement cannot be the foundation for a conversion divorce when it is not acknowledged as required by Domestic Relations Law § 170 (6). (See, Beer v Beer, 87 AD2d 805, 806 [2d Dept 1982], citing Cicerale v Cicerale, 85 Misc 2d 1071, affd 54 AD2d 921.)
*565 An acknowledgement consists of two aspects: the oral declaration of the signer of the document and the written certificate prepared by a public official. That official is generally a notary public attesting to the parties’ oral declaration. (Garguilio v Garguilio, 122 AD2d 105, 106 [2d Dept 1986].) The agreement must also have endorsed on, or attached, a certificate stating that the person taking the acknowledgement "knows or has satisfactory evidence that the person making the oral declaration is the person described in and who executed [the] instrument.” (Garguilio v Garguilio, supra; Real Property Law § 303.)
The shareholder’s agreement is not properly acknowledged pursuant to the requirements of Domestic Relations Law § 170 (6). The agreement cannot be subsequently acknowledged by affidavit. (Garguilio v Garguilio, supra.) Accordingly, the wife’s motion to amend is denied. The shareholder’s agreement cannot form the foundation for a conversion divorce.
Regardless, were this court to have reached the merits of this application, the wife’s motion would still be denied as the shareholder’s agreement may not be categorized as an agreement which falls within Domestic Relations Law § 170 (6).
In the papers submitted to support the motion, the parties submit many of the cases which have addressed what form, if any, an agreement must take to be considered a separation agreement under the Domestic Relations Law. An overview of these cases is important as it serves not only as documentation of the various types of agreements which have been considered in the context of Domestic Relations Law § 170 (6), but also serves to explain the reasoning behind the enactment of Domestic Relations Law § 170 (6).
Perhaps the "forefather” of the conversion divorce case is Gleason v Gleason (26 NY2d 28 [1970]). In Gleason, the Court addressed whether Domestic Relations Law § 170 (5) applied retroactively to permit a divorce based on a separation decree rendered before the present statute was enacted. Although this case differs factually with the instant case, the dicta is instructive as it recognizes the public policy behind conversion divorces.
The Court found that it is "socially and morally undesirable to compel couples to a dead marriage to retain an illusory and deceptive status and that the best interests not only of the parties but of society itself will be furthered by enabling them 'to extricate themselves from a perpetual state of marital limbo.’ ” (Gleason v Gleason, supra, at 35 [citation omitted].)
The Court further recognized that Domestic Relations Law § 170 when read "as a whole, points to the construction that *566 all that has to be proved is that there is some kind of formal document of separation”. (Gleason v Gleason, supra, at 37.) The Court goes on to state "[t]he function of the decree, as we have already noted, is merely to authenticate the fact of separation.” (Gleason v Gleason, supra, at 37.)
The parties both cite Christian v Christian (42 NY2d 63 [1977], supra) to support their positions. In Christian, the parties had entered into a separation agreement. The lower court and the Appellate Division grappled over whether that agreement should be set aside as null and void due to fraud.
The court found that even if an agreement was subsequently found to be void and unenforceable, it may still be accepted as evidence of the parties’ agreement to live separate and apart. In this manner the agreement may satisfy the statutory requirement for a separation agreement. The Christian Court reiterates much of what it said earlier in the Gleason case (supra). Thus, it recognized that Domestic Relations Law § 170 (6) applied to dead marriages and that "[t]he agreement is 'simply intended as evidence of the authenticity and reality of the separation’ ” (Christian v Christian, supra, at 70 [citing Gleason v Gleason, supra, 26 NY2d, at 35]).
Other precedents have acknowledged the factor that the agreements serve only to authenticate the parties’ separation. As such there are cases where the court has granted a conversion divorce upon a stipulation made in open court where it evidenced the parties living apart. (Martin v Martin, 63 Misc 2d 530 [Sup Ct, Queens County 1970].)
In addition, a conversion divorce was granted where the separation agreement did not specifically provide that the parties had the right to live separate and apart. In Littlejohns v Littlejohns (76 Misc 2d 82 [Sup Ct, NY County 1972]), the court found that where the agreement contained support provisions and it was demonstrated that the parties did not live together after the agreement was signed, the agreement did qualify as a separation agreement under Domestic Relations Law § 170 (6).
The shareholder’s agreement in this action does specifically acknowledge that the parties were living separate and apart at the time of its execution and were planning to continue to do so. Plaintiff contends that this fact in particular, based on prior case law, supports her request to amend the complaint to include a cause of action for a conversion divorce.
While both Gleason and Christian (supra) recognize this factor, this court is unprepared to opine as to whether any agree *567 ment may be sufficient to satisfy Domestic Relations Law § 170 (6) simply because that agreement evidences the parties living separate and apart. To do so is to set a dangerous precedent and one which may result in an overwhelming inequity.
This court’s concern primarily arises from the fact that all the cases cited by the parties differ in one respect from this action. The cited cases clearly demonstrate that the parties entered into an agreement, whether it be stipulation or "separation” agreement, with the intent of acknowledging that their marriage was dead.
Those parties intended " 'to extricate themselves from a perpetual state of marital limbo.’ ” (Gleason v Gleason, 26 NY2d, at 35, supra.) They knew that their actions resulted in a definite separation.
In this action, the husband contends that he signed a shareholder’s agreement while in marriage counseling. Although the agreement does acknowledge that the parties were living separate and apart, it is not clear that this agreement was intended by the parties to be used as a means of extricating them from their marriage. Indeed, several facts indicate that this agreement did not signify the death of the marriage. First, the parties engaged in sexual relations after they signed the agreement. In addition, other than the statement with respect to their residences and the rental value assigned to those spaces, there is no language in the agreement which indicates that it was to signify the death of the parties’ marriage. Indeed, the very lack of a proper acknowledgement and the fact that the parties failed to comply with the agreement’s terms also illustrate the lack of solemnity attached to this document.
Accordingly, the court finds that the shareholder’s agreement cannot serve as the foundation for a conversion divorce under Domestic Relations Law § 170 (6).
The court commends counsel for the high caliber of work submitted in connection with this application.
All matters not decided herein are hereby denied.