[746 NYS2d 25]

Lee E. Halsey, Appellant, v Linda A. Halsey, Respondent.

Second Department, July 22, 2002

## APPEARANCES OF COUNSEL

*Frederick C. Meyer*, Hampton Bays (*Schapiro & Reich [Perry S. Reich]* of counsel), for appellant.

*Foster & Vandenburgh, LLP,* Westhampton (*Frederic C. Foster* and *Stanely E. Gelzinis* of counsel), for respondent.

## OPINION OF THE COURT

S. MILLER, J.P.

May a prenuptial agreement provide for, not only, distribution of marital assets in event of death, separation, or divorce, but also serve as a separation agreement upon which a conversion divorce may later be based pursuant to Domestic Relations Law § 170 (6)? We answer this question with a resounding "No."

The parties herein, Lee E. Halsey and Linda A. Halsey, were unmarried and living together when their first child was born in 1983. Although they planned to marry in February 1984, a month prior to their wedding day, Lee insisted that Linda execute a prenuptial agreement. When she refused, the wedding plans were cancelled, and Linda moved out of Lee's residence with the parties' child. She returned, however, in May 1984 and again became pregnant. That pregnancy did not result in a birth.

In April 1984, feeling increasing pressure to accede to Lee's wishes, Linda retained an attorney to review the proposed prenuptial agreement. Insofar as relevant to this appeal, the agreement provided:

> "a. In the event that either party shall commence an action for separation or divorce or if either party shall for any reason choose to live separate and apart from the other for a period greater than 30 days, the parties agree that this agreement shall constitute a separation agreement. Upon the occurrence of either above circumstances each party authorizes the other or their respective attorneys to file this agreement as a separation agreement with the Clerk of Suffolk County, New York.

> "b. * * * Neither party shall commence or having commenced shall continue any cause of action for divorce except on the grounds contemplated by 170 (6) of the Domestic Relations Law (i.e. having lived apart pursuant to the terms of a separation agreement for the appropriate time)."

In May 1984, contrary to her attorney's assessment of her best interest, Linda signed the prenuptial agreement.

The parties married shortly thereafter, and their second child was born in May 1985. The marital relationship promptly deteriorated. In October 1996, Linda filed for and was granted a temporary order of protection. On February 19, 1997, Lee filed the prenuptial agreement with the Clerk of the Supreme Court, Suffolk County.

After counseling and an attempt at reconciliation failed, Lee commenced this action for a conversion divorce and ancillary relief in September 1999, pursuant to Domestic Relations Law § 170 (6). Linda asserted a counterclaim for rescission of the agreement on the grounds of duress and fraud. Lee moved to dismiss her counterclaim and for summary judgment on his complaint for a conversion divorce.

Lee contended that he was entitled to a conversion divorce since, pursuant to its terms, the prenuptial agreement converted into a separation agreement upon the happening of certain events, and the parties had lived separate and apart for over a year subsequent to the filing of the agreement pursuant to the statute. Linda cross-moved for summary judgment dismissing the complaint on the basis that the prenuptial agreement violated General Obligations Law § 5-311 since it called for the procurement of a divorce, limited the grounds for a divorce, and constituted a separation agreement made before there was even a marriage, much less a separation.

By order dated December 20, 2000, the Supreme Court denied Lee's motion for summary judgment granting a conversion divorce, and granted Linda's cross motion dismissing the complaint on the basis that the parties' prenuptial agreement could not serve as a predicate for a conversion divorce. The Supreme Court held that the prenuptial agreement, signed more than 12 years before the parties' separation, could not simply transform into a separation agreement within the meaning of Domestic Relations Law § 170 (6). Lee appeals, and we affirm.

In enacting Domestic Relations Law § 170 (6), the Legislature intended to provide no-fault grounds for divorce where a marriage was dead, based on a recognition that it was morally and socially desirable for society and for the parties to such a union to enable them to "extricate themselves from a perpetual state of marital limbo" (*Gleason v Gleason,* 26 NY2d 28, 35). The "vital and operative" fact in Domestic Relations Law § 170 (6) divorce cases is the actual living apart of the parties—pursu-

ant to the separation agreement (*Gleason v Gleason, supra* at 35). Put a bit differently, a function of the document is "merely to authenticate the fact of separation" (*Gleason v Gleason, supra* at 37). It is the physical separation rather than the writing which constitutes the actual basis of the cause (*see Christian v Christian,* 42 NY2d 63).

For a separation agreement to be a valid predicate for a conversion divorce pursuant to Domestic Relations Law § 170 (6), the parties thereto must actually have separated before executing the agreement, or the separation must immediately follow the execution (*see Matter of Wilson,* 66 AD2d 893, *affd* 50 NY2d 59; *Elwood v Elwood,* 51 AD2d 1090). There must be mutual contemporaneous intent, at the time the parties enter into the agreement, acknowledging that the marriage is dead and that the parties wish to extricate themselves from a perpetual state of marital limbo (*see Gleason v Gleason, supra; Rose v Rose,* 167 Misc 2d 562). In the absence of the parties' actual separation at the time of the execution of the agreement, or immediately thereafter, the separation agreement may not provide the basis for a conversion divorce pursuant to Domestic Relations Law § 170 (6) (*see Klein v Klein,* 246 AD2d 195; *Costa v Costa,* 192 AD2d 1034; *Rose v Rose, supra*).

In the instant case, the prenuptial agreement, upon which the husband seeks to predicate a conversion divorce, was executed more than 12 years prior to the parties' separation, and indeed, before they were even married. The intent of the parties in signing the contract cannot be said to have been to acknowledge that their marriage was dead, since there was no marriage between them in existence at the time that they entered into the agreement. Moreover, a contract for the future separation of a husband and wife is against public policy and is unenforceable (*see Matter of Wilson,* 66 AD2d 893, *affd* 50 NY2d 59, *supra*).

Accordingly, the agreement may not form a basis for a conversion divorce, and summary judgment dismissing the husband's complaint was properly granted.

In light of the foregoing, we need not reach the wife's other argument. The husband's remaining contentions are without merit.

Therefore, the order is affirmed.

LUCIANO, SCHMIDT and CRANE, JJ., concur.

Ordered that the order is affirmed, with costs.