Charles A. Loreto, J.
Plaintiff in this action seeks rescission or reformation of a separation agreement on the ground of fraud, improvidence or invalidity and judicial separation by reason of abandonment.
The parties were married in Michigan in 1935. They lived together for approximately three years in this State and subsequently moved to Darien, Connecticut, where they purchased a home and set iqi a marital domicile. In 1946 the parties separated and after prolonged negotiation entered into a separation agreement in October, 1947. This agreement was later superseded by an agreement signed in New York City dated January 27, 1949. This later agreement, which may be *1091 described as a “lump sum” type of separation agreement, while valid under the laws of Connecticut (Liber v. Liber, 14 Conn. S. 64), is contrary to the public p'olicy of this State (Domestic Relations Law, § 51; Haas v. Haas, 298 N. Y. 69).
The court finds that plaintiff has failed to sustain the burden of proving that the agreement in question was fraudulently obtained. Her ¡success in this action, therefore, must depend on whether this forum is required to apply New York or Connecticut law in determining validity of the separation agreement.
We are not concerned here with any matter respecting the remedy, governed by the lex fori, depending upon the law of the place where suit is brought (United States Mtge. & Trust Co. v. Ruggles, 258 N. Y. 32, 40), but with the problem of deciding the substantive law of which State applies in determining the validity of the agreement at band.
In ¡some instances, as to this question the law of the place of 'the making of a personal contract has been held to govern (Straus & Co. v. Canadian Pacific Ry. Co., 254 N. Y. 407, 414); in others, that of performance (Dickinson v. Edwards, 77 N. Y. 573, 587). Such differing decisions have created an uncertainty as to the applicable rule. This has been noted by students of the subject. Thus, in his Treatise on Conflict of Laws, Beale has written: “ Where the place of contracting and of performance are different, decisions are in great confusion. In several oases the law of the place of making has been applied; in other cases, the law of performance governs. But the doctrine is widely held today that the intention of the parties, so far as it is disclosed, must control” (Vol. 2, § 332.39, pp. 1156-1157).
A similar observation has been made in Auten v. Auten (308 N. Y. 155, 159-160) in the opinion by Ftjld, J.: “ Choosing the law to be applied to a contractual transaction with elements in different jurisdictions is a matter not free from difficulty. The New York decisions evidence a number of different approaches to the question. [Citation.] ”
Recently, our appellate courts, rather than regard as conclusive the place of making or of performance, or even the intention of the parties, have laid more emphasis upon the law of tire place having “ the most significant contacts ” with the matter (Rubin v. Irving Trust Co., 305 N. Y. 288, 305). This has been called the “ grouping of contacts ” or “ center of gravity ’ ’ theory. This theory has recently been applied to contracts affecting the marital status. Thus, in a case involving a separation agreement entered into in New York and unen *1092 forcible in New York, but valid in England where plaintiff was domiciled, the Court of Appeals in Auten v. Auten (supra) applied thi-s theory in holding the law of England controlling:
‘1 Under this theory, the courts, instead of regarding as conclusive the parties’ intention or the place of making or performance, lay emphasis rather upon the law of the place ‘ which has the most -significant contacts with the matter in dispute ’. [Citations] ” (p. 160).
“ Although thi-s [center of gravity] theory may, perhaps, afford less certainty and predictability than the rigid general rules * * * the merit of its approach is that it gives to the place ‘ having the most interest in the problem ’ paramount control over the legal issues arising out of a particular factual context, thus allowing the forum to apply the policy of the jurisdiction ‘ most intimately concerned with the outcome of [the] particular litigation.’ (3 Utah L. Rev. 498-499). Moreover, by stressing the significant contacts, it enables the court, not only to reflect the relative interests of the several jurisdictions involved * * * but also to give effect to the probable intention of the parties and consideration to ‘ whether one- rule or -the other produces the best practical result ’. [Citations] ” (p. 161).
Applying the test of where lie the most significant contacts, the conclusion becomes apparent that Connecticut law must be applied. Except for a -short-term residence in thi-s State, the pair-ties for the greater period of their marriage lived in Connecticut. They resided there at the time of the separation and plaintiff -still resides there. Practically -all the property transferred under the agreement was Connecticut property, and the payments arranged were t-o be made there. It would defy logic and rea-son for -a court to conclude that New York law be applied to separation arrangements of a Connecticut couple merely because upon -separation the husband moved to New York and the legal documents were signed by him in New York.
Nor could the parties have expected any other law to apply. They were Connecticut residents and engaged Connecticut counsel to adjust their differences. Their separation agreement wa-s drawn up in Connecticut with the Connecticut law in mind. The place of its execution here has the lelast legal significance. It may well be inferred that the parties intended that the law of Connecticut should govern their separation agreement.
The complaint is, therefore, dismissed in all respects.