Hyman Korn, J.
The court tried this action brought by a husband for a divorce grounded upon subdivision (6) of section 170 of the Domestic Relations Law, to wit; that “ The husband and wife have lived separate and apart pursuant to a written agreement of separation, subscribed by the parties thereto and acknowledged or proved in the form required to entitle a deed to be recorded, for a period of one or more years after the execution of such agreement and satisfactory proof has been submitted by plaintiff that he or she has substantially performed all the terms and conditions of such agreement.”
*83 The written agreement in question was executed by the parties on August 19, 1963.
It was prepared, signed and duly acknowledged in the State of Florida, where the defendant wife then and still resides.
The wife opposes this action upon two grounds: Firstly, that the husband has failed to fulfill his financial obligations under the agreement, and secondly, that this agreement is not an ‘ ‘ agreement of .separation ’ ’ as that term is employed in subdivision (6) of section 170 of the Domestic Relations Law and thus cannot afford the plaintiff a basis for this action.
The facts in this case are not in serious dispute.
The parties were married in Egypt in 1947. (One child was born of this union, who has since reached his majority.) They took up residence in the State of New York in 1955 and sometime thereafter amicably separated, the wife and child moving to Florida, the husband remaining in New York. Some three and one-half years later (1963), the parties executed the agreement in question. There is no dispute that for some time prior to, and certainly since the execution of this agreement, the parties have lived separate and apart and have not cohabited as man and wife.
With respect to defendant’s contention that the plaintiff has not fulfilled his financial obligations, the evidence at the trial proved otherwise. Aside from some minor late payments, the court finds that the plaintiff has “ substantially performed” all his obligations under the agreement. These include not only the making of the required periodic payments, but also the purchase of a home in Florida for the use of the wife and child.
Defendant further contests this action on the ground that the 1963 agreement ‘ ‘ was not an agreement of separation ’ ’ upon which a divorce may be predicated.
Essentially, defendant asserts it is not a separation agreement because it does not specifically provide for “ custody, alimony or the right to live separate and apart ”.
With respect to alimony, the agreement does in fact provide for periodic payments for support of both wife and child, include ing upkeep of the home to be purchased for them. In addition, the plaintiff was obligated to provide health insurance and make such additional medical payments as may be required. Life insurance policies then in force for the benefit of the wife were required to be maintained. Provision was also made for future education of the child. Thus, contrary to defendant’s contention, these support provisions do provide a full plan for “ alimony ” *84 for the wife and support for the son such as is usually found in separation agreements.
As to the question of custody, the fact was that the wife did have custody of the child; nor was this right ever contested. Additionally, implicit in the provisions of the agreement obligating the plaintiff to provide support for the wife and child, purchase of a Florida home for both, and payment for the child’s education, is that the child would not be with him but rather would reside with the mother in Florida. Assuming, without conceding, that a custody provision is a necessary element for a valid separation agreement, the agreement in this case, if not directly, did inferentially provide that the custody of the child be with the mother.
The defendant further contends that the instrument in this case ' ‘ does not meet the requirements of separation agreements pursuant to Florida law ” because of the absence of a stipulation that it shall be lawful for the parties to live separately.
We must thus consider whether, as defendant contends, Florida choice of law is to be applied in construing this instrument, and if so, whether the absence of a separate and apart clause is fatal to its validity.
In the absence of anything evincing a contrary intent, the validity, effect and construction of a separation agreement is governed by the law of the place where the contract was made (16 N. Y. Jur., Domestic Gelations, § 693). This is so particularly where the circumstances indicate that the parties intended that contractual obligations be performed in the place where the contract was made (Chase Nat. Bank of City of N. Y. v. Central Hanover Bank and Trust Co., 265 App. Div. 434).
In the instant case, the wife had lived in Florida some three and one-half years prior to the agreement’s execution. It was prepared, executed, and acknowledged in Florida. Performance under the terms was to take place in that State, e.g., payments were to be made by depositing same in a Florida bank, and a house was to be purchased and maintained by the husband in Florida for the wife and child, who were to reside there. In fact, the sole contact the marriage had with New York State was that the parties had once lived here and that the plaintiff had continued as a New York resident. The place which thus appears to have the most significant contact with this agreement is Florida (Von Tresckow v. Von Tresckow, 15 Misc 2d 1090; Auten v. Auten, 308 N. Y. 155).
How, therefore, would this agreement fare under Florida law — particularly with respect to the contention by defendant that *85 a valid separation agreement must contain a provision permitting the parties to live separately? Such Florida authority as could be found by the court indicates that a “ separate and apart” clause is not a necessary ingredient for a validly enforceable separation agreement.
In Bare v. Bare (120 So. 2d 186) the Florida courts considered an agreement similar to the one at bar. There, too, the validity of the agreement was questioned because of its failure to contain a clause specifically permitting the parties to live separate and apart.
Reversing a lower court which held to the contrary, the District Court of Appeals stated (p. 188): “we find it unnecessary for the validity of an agreement providing for support to an estranged wife that it provide for the continued separation of the parties. See Scott v. Scott, Fla. 1952, 61 So. 2d 324.”
Were New York law applicable, a similar holding would be made.
In McGean v. Parsons (150 App. Div. 208) the parties had lived separate and apart but no such recital was contained in the agreement. The court stated (p. 209): “ While there was no recital on the subject in the agreement, the undisputed evidence shows that the defendants had separated and were living apart when the separation agreement was made. The plaintiff evidently thought it was necessary to reform the agreement, and so brought the action in equity, but the validity of the agreement depended upon the existence of the fact, not upon a recital of it.” (Emphasis supplied.)
See, also, Lindey, Separation Agreements and Ante-nuptial Contracts (vol. 1, § 4, par. 4, p. 4-10), where the author states: “ The validity of an agreement depends on the existence of the separation as a fact not upon its recital in the agreement.”
The wife’s reliance on Tillinghast v. Tillinghast (258 App. Div. 350) is misplaced. In that case, as a defense to a separation action the husband sought to create a separation agreement from an exchange of letters between counsel. The court rejected the husband’s claim principally on the ground that the “ agreement ” at best was illusory because his promise to pay support was revocable by him at any time.
However, the law which has evolved as to separation actions has dealt primarily with the construction of such instruments as contracts expanding, modifying or diminishing marital rights. The question in this case is not whether the 1963 agreement or any of its terms are contractually valid and enforceable. For neither party herein seeks to enforce or avoid any of the agree- *86 merit’s provisions. Bather, the is^ue is solely whether the writing in this case satisfies that portion of subdivision (6) of section 170 which requires a written “ agreement of separation ” to have been executed by the parties. To the extent that the issue is not the enforceability of the agreement but merely whether it technically complies with the legislative requirement for such a writing, the question presented here is a novel one. The statute does not define what is meant by the term “ agrees ment of separation ” nor what terms it should contain. However, when we consider the purpose for this required writing we can gain some insight into the legislative intent.
A reading of the statute indicates that the primary basis for divorce under this section is that the parties “ have lived separate and apart ’ ’ for the prescribed period of time. Thus it is the physical separation rather than any writing that forms the actual basis for this action.
As with the need for a written memorandum to satisfy the Statute of Frauds, the written agreement serves primarily as a means of preventing fraudulent or collusive claims of separation and so discourages 1 ‘ quickie ’ ’ divorces. ‘ ‘ It is reasonable to assume that the legislative intention was to enact non-fault grounds but to guard against concocted claims of separation” (Foster and Fried, The Conversion Ground for Divorce in New York, N. Y. L. J., April 30, 1969, p. 1, col. 4 [cited in Gleason v. Gleason, 26 N Y 2d 28, 38]).
Thus, that portion of the statute requiring a writing is “ simply intended as evidence of the authenticity and reality of the separation” (Gleason v. Gleason, supra, p. 35; Harris v. Harris, 36 A D 2d 594).
. The agreement in this case clearly “ evidences and authenticates ” the factual separation of the parties herein. Certainly the periodic support provisions coupled with the obligation to furnish a separate home, maintain life and health insurance, provide for future education of the child, and disposition of the house in the event of divorce, can be consistent only with the fact of the parties ’ then existing and continued separation. The wife in this case, voluntarily and in writing, agreed to the manner in which the husband was to fulfill his marital duties and both parties have since 1963 accepted performance under this agreement as complete discharge of their marital obligations. To the event that this writing evidences the parties’ actual and continued separation, call it a “ maintenance agreement ” or whatever, this court holds that it is an “ agreement *87 of separation ’ ’ sufficient at least to satisfy the requirements of subdivision (6) of section 170 of the Domestic Relations Law.
The marriage in this case exists in name only. The parties have not lived as man and wife for almost 10 years. The public policy of our State, as expressed in our new divorce law, is to permit legal interment of dead marriages (Gleason v. Gleason, supra). In view of such policy, the courts, where the parties have parted permanently, should not be excessively rigid or demanding in determining whether a writing satisfies the statutory requirement for an “ agreement of separation ”. Suffice it to say that where in a case such as this, the agreement is fairly arrived at, adequately provides for the wife and clearly evidences a separation which had in fact occurred and has continued, the statutory requirements are met.
Accordingly, judgment of divorce is granted in favor of the plaintiff.
With respect to defendant’s claim for additional attorneys’ fees, an interim award was made prior to trial with leave to apply to the trial court for additional allowance.
Based upon the nature of the services performed herein, including the originality of the issue involved herein and defense made on the wife’s behalf, the court awards defendant a total counsel fee of $2,500, with credit to plaintiff for the sum of $1,000 heretofore paid.