■ ISAAC MORHAIM, Appellant, v SARA MORHAIM, Respondent.—Order,

Supreme Court, New York County, entered on August 2, 1976, affirmed on the opinion of Gomez, J., at Special Term, without costs and without disbursements. Concur—Murphy, J. P., Capozzoli, Lane and Markewich, JJ.; Silverman, J., dissents in the following memorandum: I would reverse the order of the Supreme Court insofar as it dismissed plaintiff's first cause of action and otherwise affirm. Plaintiff husband brought an action for divorce pursuant to subdivisions (5) and (6) of section 170 of the Domestic Relations Law, the "no fault" provisions. The parties were married in 1944; a child was born in 1960. They have lived apart since 1968. In 1970, during the pendency of a support proceeding under article 4 of the Family Court Act, they entered into a written "stipulation," entitled in that proceeding, which settled the financial obligations of the husband with respect to the wife and child; and the Family Court "so ordered" that written agreement in 1970. The agreement was acknowledged by both parties in 1970 and filed in the office of the County Clerk of New York County on April 12, 1976. In the present action for divorce, plaintiff husband alleged as a first cause of action that the "stipulation" was a "written agreement of separation" under the terms of the statute; as a second cause of action, that the Family Court's action was a "decree or judgment of separation" under the terms of the statute. Special Term granted the wife's motion to dismiss both causes of action as legally insufficient under CPLR 3211 (subd [a], par 7). I agree that the second cause of action was properly dismissed. *(Wechter v Wechter, 50 AD2d 826, affd [on memorandum of App Div] 40 NY2d 964.)* However, I think the first cause of action, based on the "stipulation" as a "written agreement of separation," should be held good. In *Gleason v Gleason* (26 NY2d 28, 35), the Court of Appeals enunciated the public policy which underlies the provisions for no fault divorce: "If a reconciliation has not been effected within two years following a judicial separation, the Legislature has concluded, and reasonably so, that the parties are irreconcilable and the marriage dead. * * * Implicit in the statutory scheme is the legislative recognition that it is socially and morally undesirable to compel couples to a dead marriage to retain an illusory and deceptive status and that the best interests not only of the parties but of society itself will be furthered by enabling them 'to extricate themselves from a perpetual state of marital limbo.' " In accordance with the statutory policy, the Court of Appeals declared (p 35): "The vital and operative fact is that the parties have actually lived apart for two years after September 1, 1966, pursuant to a separation decree." In the case at bar, it is undisputed that the parties have been completely separated for over eight years. The wife has been in exclusive possession of the marital residence. The husband, having obtained a Mexican unilateral divorce, has remarried and has a child by his second wife. Plainly, the marriage between the parties is dead. The statute requires that the parties have lived apart "pursuant to a written agreement of separation" (Domestic Relations Law, § 170, subd [6]). But the requirement of such a writing like the parallel requirement of a decree of separation is, "simply intended as evidence of the authenticity and reality of the separation." *(Gleason v Gleason, supra,* p 35.) In view of that limited function of the writing, "the courts, where the parties have parted permanently, should not be excessively rigid or demanding in determining whether a writing satisfies the statutory requirement for an 'agreement of separation'." *(Littlejohns v Littlejohns,* 76 Misc 2d 82, 87, affd 42 AD2d 957.) The writing in the present case contains most of the ordinary provisions of a separation agreement: the husband is to pay support for the wife and their child; the payments for the child are to continue until the child, then 10 years old,

should reach the age of 21; the husband is to pay specified education and summer camp costs for that child; he is to pay for medical insurance for the wife and child and to maintain a $5,000 life insurance policy on his life naming the wife as sole beneficiary, with rights in the wife against his estate if she does not realize that $5,000 on the husband's death; the wife is to have exclusive possession of the house owned by the parties and may sell the house at a price agreed upon by the parties. There is no recital that the parties are living apart. But if the wife is to have exclusive possession of the house, how can the parties live anything but apart? And the provisions for payments of child support until age 21 and for a claim against the husband's estate on his death surely contemplate permanent separation. Again, "the validity of the agreement [of separation] depended upon the existence of the fact [of living apart], not upon a recital of it." *(McGean v Parsons,* 150 App Div 208, 209; see, also, *Gleason v Gleason,* 26 NY2d 28, 35, *supra; Littlejohns v Littlejohns,* 76 Misc 2d 82, 86, 42 AD2d 957, *supra.)* Finally, the parties signed and acknowledged the writing and it was filed (belatedly) with the county clerk, as required by subdivision (6) of section 170 of the Domestic Relations Law. Our decision in *Littlejohns (supra),* seems to me quite close to this situation. There the signed and acknowledged writing was a Florida "maintenance agreement" which obligated the husband to pay support as well as furnish a separate home, maintain health and life insurance, pay educational costs for the child, and which arranged for disposition of the house in the event of divorce. The court held that that agreement evidenced the parties' actual and continued separation and thus satisfied the requirements of the statute, notwithstanding the absence of explicit provisions for living apart. I see no reason to refuse like treatment to a similar agreement in New York. While the present agreement gave either party the option to have an order of the court entered thereon, the efficacy of the agreement did not depend on such an order. The six-year delay between the execution of the agreement and the husband's filing of it with the county clerk may indicate that the parties at the time of the execution of the agreement did not realize that the agreement might qualify as a separation agreement under the no-fault divorce statute. But that does not alter the legal effect of the agreement or the public policy involved. And the statute was explicitly amended in 1971 to omit the requirement that the agreement be filed in the county clerk's office within 30 days after execution. (L 1971, ch 801.)