■ DANIEL J. SCULLY, Appellant, v CAROL M. HAAR, Respondent. [889 NYS2d 806]—

Appeal from an order of the Supreme Court, Erie County (James H. Dillon, J.), entered November 5, 2008 in a divorce ac-

tion. The order granted the motion of defendant to dismiss the complaint and denied the cross motion of plaintiff for summary judgment.

It is hereby ordered that the order so appealed from is affirmed without costs.

Memorandum: Plaintiff appeals from an order that granted defendant's motion to dismiss the complaint in this divorce action and denied plaintiff's cross motion for summary judgment seeking a divorce pursuant to Domestic Relations Law § 170 (6). We affirm. "No-fault divorce applies only where there is a previous decree of separation or a written separation agreement, as required by statute [and, here, t]he parties have neither" (*Schine v Schine*, 31 NY2d 113, 116 [1972], *rearg denied* 31 NY2d 805 [1972]). Plaintiff relies on a "Parenting Plan Agreement" (agreement) executed by the parties after an earlier divorce action commenced by plaintiff was dismissed and the court in that action retained jurisdiction over ancillary issues. The agreement relates solely to matters of custody and visitation and, although it was signed and acknowledged by the parties and filed with the County Clerk by plaintiff (*see* Domestic Relations Law § 170 [6]), it neither purports to be a separation agreement as that term is generally understood (*see* § 236 [B] [3]), nor makes any explicit reference to the parties' separation. We conclude, particularly in light of the circumstances in which the agreement was made, that it does not "evidenc[e] the parties' agreement to live separate and apart, [and] thus [it does not] satisfy[ ] the statutory requirement [with] respect to a separation agreement" (*Christian v Christian*, 42 NY2d 63, 70 [1977]; *see Sint v Sint*, 225 AD2d 606 [1996]).

All concur except Peradotto, J., who dissents and votes to reverse in accordance with the following memorandum:

Peradotto, J. (dissenting). I respectfully dissent and would reverse because I agree with plaintiff that the 30-page "Parenting Plan Agreement" (agreement) at issue in this matter constitutes a "written agreement of separation" within the meaning of Domestic Relations Law § 170 (6).

Plaintiff and defendant were married on May 8, 1993 and have three minor children. The parties have lived apart since March 2005. On March 4, 2005, plaintiff commenced an action for divorce by summons with notice. After extensive and ultimately futile negotiations between the parties, plaintiff filed a complaint on August 11, 2006 that did not specify any misconduct on the part of defendant but requested that plaintiff be awarded custody of the parties' children. On September 15, 2006, Supreme Court granted defendant's motion to dismiss the

complaint based on the insufficiency of plaintiff's allegations but, as noted by the majority, "retained jurisdiction over ancillary issues."

Thereafter, the parties entered into the agreement, the preamble to which provides that "the parties are now desirous of resolving custody and ancillary issues without a trial." The agreement, inter alia, grants sole custody of the parties' children to defendant and establishes a detailed access schedule for plaintiff. It further provides that the agreement "shall be submitted to any court in which either [p]arty may seek a judgment or decree of divorce and . . . shall be incorporated in such judgment or decree by reference." The agreement was signed by both parties, notarized, and filed with the Erie County Clerk's Office on May 11, 2007.

On May 13, 2008, just over one year after the agreement was filed, plaintiff commenced this action for divorce based on Domestic Relations Law § 170 (6), alleging that the parties had lived separate and apart pursuant to an agreement for a period of a year or more. A copy of the agreement was attached to the complaint. Defendant moved to dismiss the complaint on the ground that the agreement was not a "written agreement of separation" within the meaning of section 170 (6) because it addressed only parenting issues, it did not expressly recite the parties' intent to live separate and apart, and it was not intended to serve as a separation agreement. Plaintiff crossmoved for summary judgment on the complaint, contending that the terms of the agreement clearly established that the parties were living separate and apart.

The court granted defendant's motion to dismiss the complaint and denied plaintiff's cross motion. Although the court acknowledged that an agreement need not be in any specific form to qualify as a "written agreement of separation" pursuant to Domestic Relations Law § 170 (6), the court determined that defendant did not consent to the termination of the marriage by signing the agreement.

Domestic Relations Law § 170 (6) sets forth one of the two "no-fault" grounds for divorce in New York State. Specifically, that section provides that an action for divorce may be maintained on the ground that "[t]he husband and wife have lived separate and apart pursuant to a written agreement of separation . . . , for a period of one or more years after the execution of such agreement" (id.). The section further provides that the agreement must be signed by the parties and "acknowledged or proved in the form required to entitle a deed to be recorded" (id.). Moreover, the agreement must be filed in the office of the clerk of the county in which either party resides (id.).

Here, it is undisputed that the parties have lived separate and apart since March 2005, well in excess of the statutory period (*see* Domestic Relations Law § 170 [6]). It is also undisputed that the agreement was signed by both parties, acknowledged in the requisite manner, and filed in the County Clerk's Office (*see id.*). Thus, the only issue before this Court is whether the agreement qualifies as a "written agreement of separation" pursuant to the statute (*id.*). In my view, the legislative history and intended purpose of Domestic Relations Law § 170 (6), the important public policies underlying the "no fault" divorce grounds, and the Court of Appeals' precedent confirming the limited function of the written agreement, compel the conclusion that the agreement in this case constitutes a "written agreement of separation" within the meaning of section 170 (6).

In *Gleason v Gleason* (26 NY2d 28, 35 [1970]), decided shortly after the enactment of Domestic Relations Law § 170, the Court of Appeals recognized that the "real purpose" of the statute's no-fault provisions was "to sanction divorce on grounds unrelated to misconduct." As the Court explained: "Implicit in the statutory scheme is the legislative recognition that it is socially and morally undesirable to compel couples to a dead marriage to retain an illusory and deceptive status and that the best interests not only of the parties but of society itself will be furthered by enabling them 'to extricate themselves from a perpetual state of marital limbo' " (*id.*).

Thus, it is the *physical separation of the parties*, not the written agreement, that supplies the ground for a divorce pursuant to Domestic Relations Law § 170 (6) (*see Christian v Christian*, 42 NY2d 63, 69 [1977]; *Littlejohns v Littlejohns*, 76 Misc 2d 82, 86 [1972], *affd on op of Korn, J.*, 42 AD2d 957 [1973]). Indeed, the written agreement "is simply intended as evidence of the authenticity and reality of the separation" (*Gleason*, 26 NY2d at 35; *see Christian*, 42 NY2d at 69; *Harris v Harris*, 36 AD2d 594 [1971]). As the Court of Appeals reaffirmed in *Christian*, "[t]he 'vital and operative' fact[ ] in subdivision (6) divorce cases[ ] is the actual living apart of the parties—pursuant to the separation agreement . . . Put a bit differently, the function of the document is 'merely to authenticate the fact of separation' " (42 NY2d at 69). The statutory requirement that the parties live separate and apart for the prescribed period pursuant to a written agreement is unique to New York State and "reflects legislative concern over the fraud and collusion which historically infected divorce actions involving adultery" (*id.* at 68; *see Littlejohns*, 76 Misc 2d at 86 ["the written agreement serves primarily as a means of preventing fraudulent or collusive claims of separation and so discourages 'quickie' divorces"]).

The statute does not define the term "written agreement of separation," nor does it set forth any specific provisions that are required in such an agreement (*see Littlejohns*, 76 Misc 2d at 86). In light of the limited function of the written separation agreement, i.e., to document and authenticate the physical separation of the parties, and the public policy underlying the statute, "the courts, where the parties have parted permanently, should not be excessively rigid or demanding in determining whether a writing satisfies the statutory requirement for an 'agreement of separation' " (*id.* at 87). All that a party seeking a divorce pursuant to Domestic Relations Law § 170 (6) must prove "is that there is some kind of formal document of separation" (*Gleason*, 26 NY2d at 37). As one court aptly observed: "Too great stress has been placed upon the instrument, the indicia of proof of the separation of the parties, rather than the fact of separation. It is not the decree, judgment, or agreement that is the essence of the ground for divorce. They are merely the documentary proof" (*Markowitz v Markowitz*, 77 Misc 2d 586, 587-588 [1974]).

In light of the legislative history and manifest purpose of Domestic Relations Law § 170 (6) and the decisions of the Court of Appeals that liberally construe the documentation requirement, I cannot agree with the majority's conclusion that the agreement in this case does not constitute a "written agreement of separation" within the scope of the statute. The agreement clearly and unambiguously "contemplate[s] permanent separation" (*Morhaim v Morhaim*, 56 AD2d 550, 552 [1977] [Silverman, J., dissenting], *revd on dissenting mem of Silverman, J.*, 44 NY2d 785 [1978], *rearg denied* 44 NY2d 949 [1978]). Implicit and recognized throughout the agreement is that the parties were in fact living apart when they entered into the agreement and that they intended to continue to live apart for years to come. The agreement lists separate addresses for plaintiff and defendant in its preamble and repeatedly references the parties' separate residences throughout the remainder of the document. In setting forth plaintiff's visitation schedule, the agreement recites that "[a]ll access shall take place away from the custodial residence of [defendant]." The article of the agreement establishing plaintiff's access schedule includes a clause that the parties are free to agree on additional access "without setting a precedent for other calendar years," thus emphasizing the long-term duration of the physical separation.

Moreover, the agreement specifically contemplates the possibility of the parties' eventual divorce and the remarriage of either or both of the parties. In particular, the agreement states

that "the provisions of this [a]greement shall be submitted to any court in which either [p]arty may seek a judgment or decree of divorce and . . . shall be incorporated in such judgment or decree by reference and shall not merge . . . ." With respect to the possible remarriage of either of the parties, the agreement provides that the parties' children "shall not, for any purpose or for any reason, assume or use the name of any subsequent Husband of [defendant]." Thus, viewed as a whole, the agreement "can be consistent only with the fact of the parties' then existing and continued separation" (*Littlejohns*, 76 Misc 2d at 86).

The fact that the agreement is not entitled a "separation agreement" and does not explicitly recite that the parties shall live separate and apart is of no moment (*see Sint v Sint*, 225 AD2d 606, 607 [1996]). " '[T]he validity of the agreement . . . depend[s] upon the existence of the fact [of living apart], not upon a recital of it' " (*Morhaim*, 56 AD2d at 552 [Silverman, J., dissenting]; *see Littlejohns*, 76 Misc 2d at 85). Here, the agreement serves as " 'evidence of the authenticity and reality of the separation' " (*Christian*, 42 NY2d at 68, quoting *Gleason*, 26 NY2d at 35), thereby fulfilling the statutory purpose.

Contrary to the contention of defendant, it is irrelevant whether she intended the agreement to serve as the predicate for a subsequent divorce action pursuant to Domestic Relations Law § 170 (6). Indeed, the Court of Appeals has held that Domestic Relations Law § 170 (5), which supplies the other "no-fault" ground for divorce, i.e., that the parties have lived apart pursuant to a decree or judgment of separation for a certain period of time, applied retroactively to separation decrees rendered prior to the enactment of the statute (*Gleason*, 26 NY2d at 34-36). The Court in *Gleason* recognized that the defendant wife who prevailed in a separation action commenced prior to the enactment of section 170 (5) "had no warning that the separation decree granted to her might later furnish basis or ground for divorce by [her] 'guilty' husband" (*id.* at 40). Likewise, in *Morhaim*, the First Department noted that the six-year delay between the execution and filing of the written separation agreement in question "may indicate that the parties at the time of the execution of the agreement did not realize that the agreement might qualify as a separation agreement under the no-fault divorce statute. *But that does not alter the legal effect of the agreement or the public policy involved*" (56 AD2d at 552 [emphasis added]).

In sum, the agreement in this case "evidenced the parties' actual and continued separation and thus satisfied the require-

ments of the statute" (*id.*; *see Littlejohns*, 76 Misc 2d at 86-87). I therefore would reverse the order, deny defendant's motion to dismiss, reinstate the complaint, grant plaintiff's cross motion for summary judgment on the complaint, and remit the matter to Supreme Court to grant judgment in favor of plaintiff and to determine the remaining issues. Present—Hurlbutt, J.P., Fahey, Peradotto and Pine, JJ.