OPINION OF THE COURT

Per Curiam.

Final judgment entered October 22, 1980 reversed, with $30 costs, and final judgment directed in favor of tenant dismissing the petition.
This is 1 of 5 holdover proceedings brought against tenants residing in the 11-story loft structure situated at 821 Broadway, Manhattan. The record establishes that since the summer of 1974, at least five floors of the *350 building have been converted to residential use, with the tenants investing substantial sums in the initial renovation process or paying a “fixture fee” to an outgoing tenant for improvements previously made. Some of the tenants received rent concessions from the landlord to be applied towards the purchase of a hot water heater and other conversion expenses. All tenants testified that they were assured they could occupy their lofts for living purposes despite language in their standard loft leases which limited occupancy to “studio” use only.
Notwithstanding testimony by the landlord and its employees to the effect that none of the tenants were given permission to make major structural alterations or adapt their premises for residential use, we think it plain that the wholesale conversions of these lofts and the extent of the work necessary to effect those conversions could not have taken place without the knowledge and approval of the landlord. The owner’s position that changes of this magnitude were accomplished surreptitiously, and that its agents were not apprised that families were openly living in this building for a period of years, is untenable and scarcely believable. The circumstances compel a finding that the landlord “was aware of and expressly condoned and encouraged the conversion to residential use” (Mandel v Pitkowsky, 102 Misc 2d 478, 479, affd 76 AD2d 807; see, also, Lipkis v Pikus, 99 Misc 2d 518, affd 72 AD2d 697; 155 Wooster St. Assoc. v Bengis, NYLJ, July 2, 1979, p 12, col 1). Having done so, it is now precluded, years later, from seeking to prematurely terminate tenants’ leases upon the ground that they have breached a substantial obligation of their tenancies by using the premises for living purposes — when all concerned necessarily knew from the inception of these leases that the premises would be (and in fact have been) so occupied.
In considering these appeals, we take cognizance of recent remedial legislation concerning the subject of loft conversion. Pursuant to chapter 889 of the Laws of 1980, an owner may not recover possession of a covered dwelling unit on the ground that occupancy of the unit by the tenant is illegal or in violation of the tenant’s *351 lease because a residential certificate of occupancy has not been issued when (i) the owner knew or had reason to know at the inception of the tenancy that the tenant would occupy all or part of such unit for residential purposes, or (ii) whenever the owner shall have accepted rent from or on behalf of a tenant actually occupying all or part of such unit for residential purposes for any period of three successive months (L 1980, ch 889, § 6, subds a, c). Although this legislation did not become effective until November 26, 1980, it is to be applied to any lease or rental agreement expiring after June 11, 1980 (L 1980, ch 889, § 9). Four of the five tenant appellants herein were in possession under leases which, by their terms, were to expire subsequent to June 11, 1980.
Landlord has argued that the new law is not applicable to these proceedings because they were commenced and final judgments were rendered prior to the act’s effective date. We recognize that prospective interpretation of statutes is generally favored and that it takes a clear expression of the legislative purpose to justify a retroactive application (see Gleason v Gleason, 26 NY2d 28, 36). That purpose is established here. It is clear to us that this enactment was not intended to be given wholly prospective application because by virtue of section 9 of chapter 889 of the Laws of 1980, the law must necessarily affect, inter alia, the rights and obligations of parties under leases executed (and even expiring) prior to its date of passage. Furthermore, the memorandum of the State Executive Department states: “This legislation will provide a moratorium on evictions of loft tenants who hold leases expiring subsequent to June 11, 1980” (1980 McKinney’s Session Laws News of NY, p A-9; emphasis added).
Since these proceedings remain pending and tenants are still in possession, the law should be liberally construed to accomplish its manifest purpose of halting the summary eviction of tenants residing in former commercial lofts. Remedial legislation constitutes an exception to the general rule against retroactivity of statutes (McKinney’s Cons Laws of NY, Book 1, Stat *352 utes, § 54; see, also, Gleason v Gleason, supra; People ex rel. Rayland Realty Co. v Fagan, 194 App Div 185, affd 230 NY 653). The landlord has no vested right in a judgment that is subject to judicial review; an appellate court may reverse a judgment which was correct at the time it was rendered where, by statute, there has in the interim been a change in the law warranting that disposition of the appeal by the higher court (4 NY Jur 2d, Appellate Review, § 400).
Assuming, arguendo, that chapter 889 of the Laws of 1980 is not appropriately applied here, we would reverse the final judgments and dismiss the petitions for the reasons earlier stated in this decision. By so holding, we decide these cases in a manner consistent with what is now the expressed public policy of this State.
Concur: Dudley, P. J., Tierney and Riccobono, JJ.