OPINION OF THE COURT
Jay Stuart Dankberg, J.
“Things are seldom what them seem, skim milk masquerades as cream” wrote W. S. Gilbert in 1878 in “H.M.S. Pinafore” (Act II).
Does the fact that the Rent Stabilization Law of 1969 (Administrative Code of City of New York, § YY51-1.0 et seq. [RSL]) and the Emergency Tenant Protection Act of 1974 (L 1974, ch 576, § 4) extend regulatory protection, generally, where six or more dwelling units are contained in a building, mean that a structure presently containing six residences can never be exempt from regulation? Or is the “Pinafore” refrain:
“What never?
“Well, hardly ever!”
applicable also to this lawsuit, as it is to most of life’s activities when one attempts to use the inflexible word “never”?
*719 This is a holdover summary proceeding commenced by petitioner landlord of 123 East 18th Street, Manhattan, on the ground that respondent tenant’s lease has expired. Tenant maintains that, since his building presently contains six dwelling units, his occupancy should be regulated by the Emergency Tenant Protection Act of 1974 (ETPA), which requires landlord to offer a renewal lease under rent stabilization guidelines. Landlord alleges, inter alia, that the building is a “free market” structure, not subject to rent stabilization. This is based upon its contentions that (a) the building never contained more than five dwelling units; (b) the first certificate of occupancy for the building was obtained December 30, 1975; and (c) the building was substantially rehabilitated as family units after January 1, 1974.
After trial, two issues are presented. Does the subject building contain six or more residential units? If so, is there an absolute requirement that the apartment in litigation be registered with rent stabilization, either pursuant to the Rent Stabilization Law of 1969 or the ETPA, regardless of when the sixth dwelling unit was created?
Neither counsels’ nor the court’s research has uncovered any reported decision on point. In the September and November, 1981 issues, the Apartment Law Insider (a fairly new monthly newsletter in the landlord-tenant arena), discussed six fact patterns in the complex interrelationship between a building’s certificate of occupancy, the number of actual dwelling units and the ETPA. The articles cite no case law or legal rationale applicable to the facts herein. Accordingly, this is a case of apparent first impression.
BACKGROUND
Prior to 1970, the four-story building at 123 East 18th Street was totally occupied by commercial tenants. In 1970, there was “residential rehabilitation” — the first floor remained commercial — the upper floors were converted to residential use. Tenant herein took possession of apartment 3F in 1970; the building then contained less than six residential dwelling units.
*720 In 1975, what apparently is the first certificate of occupancy for this very old building was issued by the department of buildings. It provides for four residential units — two each on the third and fourth floors.
Moreover, whether the sixth unit (3R) is presently occupied for residential or mixed residential and commercial use (if so, in apparent violation of the certificate of occupancy), does not affect this decision. It has been held that the use of an apartment solely for residential occupancy or for mixed residential and commercial purposes does not alter its rent stabilization status (Matter of Zeitlin v New York City Conciliation & Appeals Bd., 46 NY2d 992; Park Towers South Co. v A-Lalan Imports, 101 Misc 2d 507; see, also, New York City Conciliation and Appeals Board [CAB], Opn Nos. 106, 2569, 7406 [enforcement “agency” of the Rent Stabilization Law (Administrative Code, § YY515.0)]).
The issue here is whether the conversion of the five-unit building into six — when the second floor was subdivided in mid-1978 — brought the entire edifice under the statutory ambit of the Rent Stabilization Law and Code of the Real Estate Industry Stabilization Association of New York City, Inc. (Rent Stabilization Code).
Section 5 (subd a, par [4], cl [a]) of the ETPA provides that housing accommodations in a building containing fewer than six dwelling units are exempt from said law and, thus, from stabilization. The only exceptions are buildings completed after June, 1974 and which are either constructed pursuant to section 421 of the Real Property Tax Law, receive a “J-51” tax abatement, or are rehabilitated under article 15 of the Private Housing Finance Law.
The ETPA specifies the number of residential units a building must contain in order to be encompassed by the statute. However, there are six possible instances where confusion may result whether a building contained six units on the base date (May 31, 1968 under RSL of 1969; July 1, 1974 under ETPA of 1974; see Apartment Law Insider, Sept., 1981, p 3, col 1; Nov., 1981, p 4, col 1):
(1) Six units on base date into less thereafter — if a building contains six apartments on the base date and one (or more) thereafter is legally eliminated, the other units *721 remain stabilized (CAB, Opn Nos. 7590, 7591, 7933,18257; see Matter of Frankel, NYLJ, April 2, 1970, p 2, col 3 [Becker, J.]).
(2) Six units on base date into more thereafter — absent a “substantial renovation” on or after January 1, 1974, which would take a building out of stabilization (ETPA, § 5, subd a, par [5]) if a building has six units on the base date, and thereafter a seventh (or more) is constructed or legally converted from commercial to residential use, the original apartments and the seventh are stabilized (4 On Park Assn, v Jaffe, NYLJ, Feb. 3, 1981, p 6, col 6; Dec. 2, 1980, p 10, col 6 [Lane, J.]; see, also, Hickey v Bomark Fabrics, 111 Misc 2d 812).
In the instant proceeding, landlord maintains that the premises are excluded from the ETPA since the building’s second floor was “substantially rehabilitated as family units” subsequent to January 1,1974. However, there was not sufficient evidence to substantiate this allegation. Landlord’s vice-president testified that the only renovation done since 1970 was on the second floor, where one residential apartment was created, then converted into two units. This is not such “substantial rehabilitation” of the building as a whole as would remove the structure from ETPA coverage — the statutory exemption does not apply if work is merely done to a few individual units within a premises (Hickey v Bomark Fabrics, supra; Goodman v Ramirez, 100 Misc 2d 881; see Apartment Law Insider, Feb., 1982, p 5).
(3) Six units prior to base date; less on base date — when, as of the base date, a building has five apartments pursuant to its certificate of occupancy, but some time prior contained six (or more) “legal” or “illegal” units, such buildings do not fall within rent stabilization; the situation on the base date is controlling (see Cooper v Schube, NYLJ, July 22,1981, p 10, col 4 [Grossman, J.]; see, also, Simpson v Shapiro, NYLJ, Jan. 25,1979, p 12, col 4 [Nason, J.]). In Simpson, the building had six units on May 31, 1968 but .only five on July 1, 1974. It was held that an apartment vacated during “vacancy decontrol” did not become restabilized pursuant to ETPA since there were less than six units on July 1, 1974. However, no determination was reached on the stabilization status of the other apartments *722 (see Apartment Law Insider, Sept., 1981, p 3, col 2; Nov., 1981, p 4, col 2).
(4) Certificate shows six units on base date; actually less — if the certificate of occupancy indicates six apartments on the base date but, in actuality, two have been “illegally” combined, Cooper v Schube (supra) implies that such building would be subject to stabilization. It is the number of units as stated in the certificate of occupancy which controls, not the number of actual occupancies (see, also, CAB, Opn No. 126, affd sub nom. Matter of Frankel, supra; CAB, Opn No. 18257).
(5) Certificate shows five units on base date; actually more — where the certificate of occupancy states that five apartments exist, then pursuant to Cooper v Schube (supra) an “illegal” sixth unit should not subject the premises to stabilization (see Apartment Law Insider, Sept., 1981, p 3, col 2). However, this reasoning offers inducement to an owner to not comply with requirements of amending the certificate of occupancy — a conclusion that is contrary to law and logic. The extension of Cooper to this end, moreover, conflicts with decisions such as Belner v Gallagher (NYLJ, April' 30,1980, p 10, col 2 [Murphy, J.]) and Lovell v 56 East 11th Realty Corp. (NYLJ, July 15,1981, p 11, col 1 [Helman J.]). In Belner, it was found that an apartment was subject to rent control even though the certificate of occupancy showed fewer dwelling units than the statutory minimum for rent control status; the court examined the number of actual occupancies. In Lovell, the court declared that loft tenants were entitled to rent stabilization protection (under the ETPA) even though their tenancies resulted from commercial lease forms; the court examined the type and number of actual occupancies.
Finally, the Cooper reasoning is difficult, if not impossible, to harmonize with the “older” line of cases describing a “de facto multiple dwelling” (see Ashraf v Breen, NYLJ, Feb. 8, 1982, p 6, col 2 [App Term, 1st Dept]; Glatzer v Malkenson, NYLJ, Aug. 31,1976, p 10, col 4 [App Term, 2d Dept], and cases cited therein) and the “newer” cases concerning lofts converted into “de facto multiple dwellings” (Mandel v Pitkowsky, 102 Misc 2d 478, affd 76 AD2d 807; Lipkis v Pikus, 99 Misc 2d 518, affd 72 AD2d 697; *723 Sixty-Four Fulton St. Assoc, v Dwyer, NYLJ, May 21,1981, p 7, col 1 [App Term, 1st Dept]; Gordon & Gordon v Mandavin, Ltd., 108 Misc 2d 349; Lovell v 56 East 11th Realty Corp., supra; Ehrman v Consolidated Edison Corp., NYLJ, Jan. 29, 1982, p 6, col 4 [Wilk, J.]). With all the above stated, as of the writing of this decision, research has not disclosed any reported or unreported decision “on all fours” with this issue.
(6) Less than six units in 1968; six thereafter — where a building contained less than six units on May 31, 1968, it was not included in coverage by the Rent Stabilization Law of 1969. If a sixth residential unit is subsequently created — by the addition of a new apartment or (as in the instant proceeding) the subdivision of an old unit — because of the ETPA, possible rent stabilization status of the building rises renewed like the legendary phoenix of Egyptian mythology.
Of the above six examples, the instant proceeding lies within the sixth fact pattern.
Based upon this fact pattern, it is held that the protection of rent stabilization under ETPA adheres only when the sixth residential unit is created on or before July 1, 1974, the base date of the ETPA (see Matter of Frankel, NYLJ, April 2, 1970, p 2, col 3, supra). This limitation of extending stabilization coverage is in keeping with the legislative purpose of requiring six or more dwelling units and, thus, to exclude small buildings from the rent stabilization umbrella (Matter of Schacht v City of New York Housing & Dev. Admin., 63 Misc 2d 1003,1004). However, if it was timely created, stabilization coverage would extend whether or not the sixth unit is described in the certificate of occupancy.
BURDEN OF PROOF
In general, since he is the one who instituted the litigation, the burden of proof of establishing the factual allegations set forth in the petition (RPAPL 741) is on the petitioner and remains with him throughout the trial. Under the sixth fact pattern, with respect to pleadings concerning rent control or stabilization status of the apartment in dispute (Rules of Civil Court of City of New York, *724 22 NYCRR 2900.21 [e]) petitioner landlord makes out a prima facie case by showing the certificate of occupancy on the base date of May 31,1968 and offering testimony as to when landlord contends the sixth dwelling unit was created. Thus, if landlord asserts the premises are not stabilized, testimony would be proffered that the sixth apartment did not come into being until after July 1, 1974.
Then, similar to the law of bailments (2A Warren’s Negligence [3d ed], Bailor and Bailee, § 5.02), if respondent tenant argues that the premises are protected by stabilization, the burden of going forward with evidence then shifts to tenant to show the circumstances under which stabilization would apply. Thus, tenant might demonstrate that the certificate of occupancy did not accurately reflect what a visual inspection of the premises would have shown on May 31, 1968 or on some other date prior to or on July 1, 1974.
Applying these legal principles to the instant proceeding, undisputed evidence produced by landlord at trial demonstrated that prior to July 1, 1974 there were less than six residential units located within the subject premises. It was not until mid-1978 that a sixth unit was created within the building by the subdivision of the second floor.
Tenant did show that the change of the second floor from commercial to residential use and the subdivision of it into two apartments was done without amendment of the certificate of occupancy. This is improper and probably will result in some administrative activity against the landlord by the City of New York. But there is no contention that such action should include imposition of stabilization to this otherwise “free market” building at this time.
Moreover, although tenant did show that landlord’s vice-president was somewhat less than completely candid and did get him to change his testimony in several regards, these details were not sufficiently material for the court to apply the maxim “falsus in uno, falsus in omnibus” and, thus, reject his entire testimony.
Nor is it argued that the premises benefit from any of the tax abatements which would, under the ETPA, apply the Rent Stabilization Law to this building.
*725 Thus, it is found that landlord has sustained its burden of proof that the premises are not subject to rent stabilization or the ETPA, as alleged in the petition (see Papazaharios v Papantoulis, NYLJ, Sept. 26,1978, p 14, col 5 [App Term, 2d Dept]). The tenant did not meet the duty pf rebutting landlord’s prima facie proof.
It would be an academic exercise, therefore, to address the other exception that landlord claims, concerning the fact that the first certificate of occupancy was obtained December 30, 1975. It would appear, however, that the rent stabilization application to buildings whose initial certificate of occupancy was obtained between March 10, 1969 and December 31, 1973. (Administrative Code, § YY51-3.0, subd a, par [1], cl [d]; Rent Stabilization Code, subd 2, par [f], cl [7]), should apply to new residential structures, not existing buildings which did not have a certificate or for which a certificate was not located at the Department of Buildings.
CONCLUSION
No known mathematical theorem can turn five apartments on July 1,1974 into six. The ETPA clearly provides that in order for a building to fall within its ambit, with but limited exceptions, the structure must contain six residential units on July 1, 1974.
While the court sympathizes with the tenant’s plight, it must find that the premises in question is a “free market” building and not subject to rent stabilization. It follows, therefore, that landlord may lawfully refuse to renew tenant’s lease.
Accordingly, for the reasons stated, in the judgment to be settled herein, the clerk is directed to enter final judgment of possession in favor of petitioner landlord and against respondent tenant. In light of the passage of time since proceedings were first commenced, the warrant of eviction is to be issued forthwith, with execution stayed until April 30, 1982 (see Carbone v Paskowski, NYLJ, Oct. 21, 1977, p 13, col 5 [Miller, J.]). Use and occupancy is established at the rate heretofore paid as rent.
Settle judgment as to the stay, which judgment should include a provision for notification to the New York City *726 Department of Housing Preservation and Development regarding the second floor alteration without amendment of the certificate of occupancy.
The court compliments both trial attorneys on the eloquence of their presentations and the excellence of their legal memoranda.