OPINION OF THE COURT

Per Curiam.

Order entered April 29, 1983 reversed, with $10 costs, renewal granted, and on renewal tenant’s motion to dismiss the petition treated as a motion for summary judgment pursuant to CPLR 3211 (subd [c]) is denied and petitioner is granted summary judgment on the petition.
Appeal from order entered September 3,1982 dismissed, without costs, as moot.
*800 The submission of additional factual affidavits on petitioner’s motion of March 1, 1983 sufficed to make it a motion for renewal, the denial of which is reviewable on appeal (Seabrook Realty Corp. v 139 W. Mut. Assoc., 60 AD2d 821). On the whole record, Civil Court should have denied summary judgment to the tenant and granted judgment to the landlord.
The tenant entered into occupancy of his premises in 1976, apparently on a month-to-month basis, and used it solely as a tailor shop. The certificate of occupancy of the building at 129 East 56th Street, Manhattan, states that it contains five apartments and two commercial spaces. Tenant alleges that in or about February, 1978, he began to “reside” at the store, eating and sleeping there, albeit the space has no bath, shower or cooking facilities. This changeover from commercial tenant to resident, he alleges, took place with the consent of the chairman of the board of directors of the petitioner corporation or, at least, to the knowledge of that individual. Petitioner’s principals have denied knowledge that tenant was purporting to maintain his residence in the tailor shop. The rent has remained the same since the tenancy began in 1976, predating the tenant’s claimed new status of 1978, viz., tailor plus resident.
Petitioner served a 30-day notice of termination and brought holdover summary proceedings in September, 1981. On tenant’s motion to dismiss, the Civil Court elected to treat the motion as one for summary judgment and, after appropriate notification to the parties, granted summary judgment dismissing the petition. The court found (115 Misc 2d 506, 508) that tenant is a “combination commercial-residential tenant”; that the landlord had acquiesced in that status since February, 1978; and that the tailor shop conversion added a sixth residential unit to the building, rendering it subject to coverage under the Emergency Tenant Protection Act of 1974 (L 1974, ch 576, § 4 [ETPA]).
The ETPA is a form of local option legislation, which becomes effective in any particular jurisdiction only on determination by the local legislative body of the existence of a public emergency and of the necessity of regulating *801 and controlling residential rents within such locality. By resolution dated June 20,1974, the New York City Council declared an emergency pursuant to the ETPA (see Axelrod v Starr, 52 AD2d 232, 234-235). A declaration of emergency could be made as to all or any class or classes of housing accommodations except, inter alia, “housing accommodations in a building containing fewer than six dwelling units” (ETPA, § 5, subd a, par [4], cl [a]). It is clear that as of the time an emergency was declared in New York City, there were only five residential units within the subject premises; to the extent a sixth residential unit was ever created, it was not created until 1978. While the statute itself is not precise, and no pertinent legislative history has been referred to us, it is our judgment that residential units added subsequent to the declaration of emergency should not result in bringing buildings or the decontrolled units therein under the rent stabilization scheme (123 East 18th St. Corp. v Gisler, 113 Misc 2d 718; contra Thomas Loft Tenants Assoc. v Sylvan Lawrence Co., 117 Misc 2d 360). There is an analogous exemption in the act for “housing accommodations in buildings completed or buildings substantially rehabilitated as family units on or after January first, nineteen hundred seventy-four” (ETPA, § 5, subd a, par [5]). Presumably, the legislative purpose here was to encourage the creation of new housing units, which might otherwise not be undertaken by builders confronted with rent regulation. That same legislative purpose is served by like treatment of owners who, while not involved in “substantial rehabilitation”, create additional family units in smaller buildings.
Assuming arguendo that there need not be six existing residential units as of a certain date, and that ETPA coverage attaches whenever a multiple dwelling contains six dwelling units, we would still, on the facts of this particular case, grant the landlord’s petition. A tenant cannot be permitted to confer stabilized status upon himself. If a landlord is to be made subject to the provisions of the Rent Stabilization Law (Administrative Code of City of New York, § YY51-1.0 et seq.) and all the obligations that entails, on account of housing units added subsequent to the enactment of the ETPA, there must be convincing *802 evidence of the landlord’s participation and interest in the creation of those units. The space at issue was rented as a tailor shop and was never intended for use as other than a tailor shop. The cases in the loft area (e.g., Gordon & Gordon v Madavin, Ltd., 108 Misc 2d 349, affd 85 AD2d 937; Mandel v Pitkowsky, 102 Misc 2d 478, affd 76 AD2d 807), involving the wholesale conversion of factory buildings to residences, with substantial refurbishing by redecorating tenants at the instance of landlords who thereafter sought to capitalize upon the conversions, are not apposite to this situation on East 56th Street where the tenant essentially moved in surreptitiously, installed a cot and a hot plate, and did not change the nature or structure of the premises to any appreciable degree. Accepting as true tenant’s assertion that petitioner had knowledge of or tolerated his joint occupancy, that would do no more than estop petitioner from maintaining an eviction proceeding upon the ground that such conduct constituted a substantial breach of the tenancy. To go further and hold that petitioner somehow accepted tenant as a stabilized occupant in a building never covered by stabilization, entitled to perpetual renewals, is a result to which we cannot subscribe.
Sullivan, J. P., Sandifer and Parness, JJ., concur.