OPINION OF THE COURT
Memorandum.
Final judgment unanimously reversed, with $10 costs to petitioner, petition reinstated and matter remanded to the court below for further proceedings in accordance with the memorandum hereon.
A holdover proceeding was commenced against the tenant to recover possession of his apartment on the ground that possession of same violated a substantial obligation of his tenancy in that he had a dog in his apartment. The facts showed that tenant had the dog for six years and that he had the permission of the prior owner for same, even though the lease prohibited pets in the apartment. Subsequent to the commencement of this proceeding, but prior to *33 the trial (Oct. 26,1983), Local Law No. 569-B of 1983 of the City of New York (Administrative Code of City of New York, § D26-10.10) became effective.
A reading of the statute in question makes it clear that it applies to existing leases and, therefore, would be deemed retroactive. The more critical issue is whether the waiver provision in the statute should be applied prior to the effective date of said statute. For the reasons to follow, this court holds that the waiver provision is to be effective from the date of the enactment of the statute.
Prior to October 26, 1983 a landlord would have been entitled to collect rent and still maintain a holdover proceeding where the lease contained a no-pet and no-waiver clause (see Pollack v Green Constr. Corp., 40 AD2d 996, affd 32 NY2d 720; see, generally, Jefpaul Garage Corp. v Presbyterian Hosp., 61 NY2d 442). When the City Council enacted the bill in question, its legislative declaration found that the bill was “necessary to prevent potential hardship and dislocation of tenants within this city” and the local law provided that it was to take effect “immediately and shall apply to existing and future leases and renewals.”
In McKinney’s Statutes (McKinney’s Cons Law of NY, Book 1, § 51, p 98), it is stated: “The Legislature may not, however, pass a statute which, by reason of its retroactive operation, impairs the obligation of a contract”.
In 56 NY Jur (Statutes, § 267, p 714), it is stated: “If it is unmistakable that an act was intended to operate retrospectively, that intention is controlling as to the interpretation of the statute, even though it thereby becomes invalid because it conflicts with constitutional prohibitions of retrospective legislation, the impairment of contracts, or the disturbing of vesting rights” (emphasis added).
In one of the leading cases in this area, the First Department, in Weiler v Dry Dock Sav. Inst. (258 App Div 581, affd 284 NY 630), explained that for retrospective legislation to be passed, it had to be enacted under the police power and in the face of a public emergency (to the same effect, see Kinney v Kinney, 48 AD2d 1002,1003; Phillips v Agway, Inc., 88 Misc 2d 1087, 1089; Jespersen-Kay Modu *34 lar Constr. v Clinton Ave. Paul Place Houses, 85 Misc 2d 721). In this last cited case, the court stated (pp 725-726):
“It is reasonable to assume that this contract containing the waiver clause was entered into in reliance upon the law as it existed then and upon prior rulings by the courts upholding the validity of waiver agreements, and the parties regulated their conduct accordingly and executed the contract with express legislative sanction. These elements were absent in cases where the courts have found that the Legislature was warranted, within the scope of the police power, to take remedial steps to curb fraudulent or oppressive conduct or correct conditions endangering the public health or welfare, even though the legislation interfered with rights established by existing contracts, where the vital public purposes sought to be achieved outweighed interference with such contractual rights * * *
“The rights, liabilities and expectations of the parties here were fixed by the contract, voluntarily entered into, and created, recognized and enforceable under the law. While the practice of requiring lien waivers is repugnant to our present public policy, it accorded with public policy as expressed by the Legislature at the time the waiver was executed, and the application of the present law to this contract would stamp as illegal what theretofore was legal, and impose new conditions on the existing contract not in the contemplation of the parties at the time of its execution. Settled expectations arrived at with respect to substantial interests ought not to be defeated” (emphasis added).
In the case at bar, it is not necessary to cite all the reported cases holding (a) that a violation of the no-pet clause was a violation of a substantial obligation of the tenancy and that (b) such clauses were not violative of public policy and were enforceable. This clause was proper when the lease was signed by the parties. The City Council herein did not find that such a clause violated public policy (indeed, it would be difficult to so find in view of the language in the Pollack case, supra) and only found that knowledge for a three-month period would be deemed a waiver of such breach as a basis for a holdover proceeding. To illustrate the difference between this statute and one where the retroactive effect can effect a contractual right, *35 one only has to look at how section 235-f of the Real Property Law was construed in 420 East 80th Co. v Chin (97 AD2d 390) wherein the court noted that the statute in question therein found restrictions as to occupancy of an apartment to be unenforceable as against “public policy.”
In sum, one finds that retroactive legislation cannot impair preexisting contract rights unless it is enacted under the police power and there is a public emergency or it is violative of public policy. The “no pet” clauses were held to be proper by the Court of Appeals. The statute in question permits holdover proceedings to be commenced so long as they are brought within three months of the landlord gaining knowledge of the existence of the violation, thereby removing any claim of public emergency or public policy. To uphold the constitutionality of this local law, we should apply it to leases entered into prior to its effective date, but the waiver period should be computed from the effective date of the statute.
A second reason for not applying the waiver prior to the effective date of the statute is based on the long-standing definition of that term. Without belaboring the point, “waiver” is defined as “a voluntary and intentional relinquishment or abandonment of a known existing legal right, advantage, benefit, claim, or privilege, which except for such waiver the party would have enjoyed.” (21 NY Jur, Estoppel, Ratification & Waiver, § 88, p 126.) For a waiver to be valid, it must be intentional, and a “Waiver will not be implied contrary to the intention of the party whose rights would be injuriously affected thereby” (21 NY Jur, Estoppel, Ratification & Waiver, § 95, pp 133-134). In short, the answer is that one cannot waive what one does not know one is waiving (21 NY Jur, Estoppel, Ratification & Waiver, § 96). In the case at bar, prior to the new law, a landlord was secure in the knowledge that his nonaction was valid and did not impair his rights under the lease. To hold that a waiver attached to that nonaction in a retroactive manner would be violative of all prior doctrine on the law of waiver and would be contrary to the intentions of the parties herein.
In conclusion, it is the opinion of this court that the correct interpretation of the statute in question would *36 apply it to leases entered into prior to October 26,1983 but would compute the waiver period from the effective date of the statute. In view of the fact that this proceeding was commenced prior to the effective date of the statute, there can be no finding of waiver herein.
Pino, P. J., Buschmann and Hirsch, JJ., concur.