MEGALOPOLIS PROPERTY ASSOCIATION, Respondent, v CLAUDE BUVRON, Appellant.

Second Department, September 30, 1985

### APPEARANCES OF COUNSEL

*Jolene R. Marion* for appellant.

*Horing & Welikson* (*Mark Lewinter* of counsel), for respondent.

*Frederick A. O. Schwarz, Jr., Corporation Counsel* (*Helen Bornstein* of counsel), for City of New York, *amicus curiae.*

### OPINION OF THE COURT

LAWRENCE, J.

On October 26, 1983, the Mayor of New York City signed into law Local Laws, 1983, No. 52 amending the Administrative Code of the City of New York, chapter 26, title D by adding a

new section, D26-10.10. This new law, concerning the "[r]ights and responsibilities of owners and tenants in relation to pets" provides, in pertinent part, that a lease provision which prohibits the harboring of household pets is deemed waived where a tenant openly and notoriously has harbored a household pet for a period of three months or more following taking possession of the apartment and the owner or his agent has knowledge of this fact but fails within the three-month period to commence a summary proceeding or action to enforce the lease provision. We granted leave to appeal in this case to consider whether the instant eviction proceeding, which was commenced prior to the law's enactment, should now be dismissed because the tenant harbored a pet with the knowledge of the landlord for more than the three-month period. We hold that the new law is applicable to the instant proceeding and, accordingly, a dismissal is warranted.

I

The facts are not in dispute. Petitioner-respondent Megalopolis Property Association (the landlord) is the owner of a multiple dwelling at 80-20 Broadway in Elmhurst, Queens. Since 1967, appellant Claude Buvron (the tenant) has lived at that address with his wife and two children in a rent-controlled apartment. In 1977, the tenant acquired a small dog. No reports of nuisance or property damage have ever been made due to the tenant's possession of the dog. However, the parties' lease contained a provision prohibiting the harboring of pets, as well as a clause which provided that the landlord did not waive his right to enforce the lease provisions if he accepted rent with knowledge of a breach of any covenant.

Consequently, on or about April 28, 1983, the landlord commenced a holdover summary proceeding seeking to evict the tenant on the ground, *inter alia,* that the tenant had failed to cure his violation of the no-pet clause in the parties' lease. In his answer to the petition the tenant claimed, among other things, that the proceeding was instituted in bad faith and that the landlord had waived enforcement of the no-pet clause by failing to act for six years.

On October 26, 1983, before this proceeding came on for trial, as aforementioned, the Administrative Code of the City of New York § D26-10.10 (set forth in full in Appendix) became effective.

Thereafter, on November 9, 1983, the Civil Court of the City of New York, Queens County (Harbater, J.), dismissed the instant proceeding on the ground that the new pet law applied

*"retroactively* to protect this tenant who ha[d] maintained his pet 'openly and notoriously' for the requisite three-month period" (*Megalopolis Prop. Assoc. v Buvron,* 121 Misc 2d 662, 663). Since the landlord had not commenced the proceeding within three months after learning that the tenant harbored a pet, enforcement of the "no-pet" clause was deemed waived (*Megalopolis Prop. Assoc. v Buvron, supra,* at p 666).

Upon the landlord's appeal, the Appellate Term for the Second and Eleventh Judicial Districts reversed the Civil Court judgment and reinstated the proceeding. The court specifically held that while the new law applied to existing leases, it could not apply to proceedings commenced prior to its effective date and, therefore, the landlord was not to be deemed to have waived his right to enforce the no-pet clause in the lease (*Megalopolis Prop. Assoc. v Buvron,* 125 Misc 2d 32).

II

In determining the sole issue on this appeal, to wit, the applicability of the new pet law to the instant proceeding, we begin with the language of the law.

The law, which was to take effect immediately, applies to all existing leases (*see,* Administrative Code of the City of New York § D26-10.10). While the law does not specifically indicate that it is to be applied to pending eviction proceedings, it expressly covers a tenant who openly and notoriously *has harbored a household pet for a period of three months or more following taking possession of a unit,* when a landlord, who has knowledge of the pet, has failed, within this three-month period of harboring, to commence a summary proceeding or action to enforce the lease provision prohibiting the keeping of such a pet (*see,* Administrative Code of the City of New York § D26-10.10 [b]).

Accordingly, we find that the law protects a tenant whose landlord had knowledge of the harboring of a pet for more than three months prior to the commencement of an action or proceeding to enforce the lease, as in the instant case.

Our interpretation of the law's language is consistent with the legislative findings of the New York City Council.

The City Council set forth the grounds upon which it enacted section D26-10.10 in the first subdivision: "a. Legislative Declaration. *The Council hereby finds* that the enforcement of covenants contained in multiple dwelling leases which prohibit the harboring of household pets has led to *widespread abuses* by building owners or their agents, who knowing that a tenant has

a pet for an extended period of time, seek to evict the tenant and/or his pet often for reasons unrelated to the creation of a nuisance. Because household pets are kept for reasons of safety and companionship and *under the existence of a continuing housing emergency it is necessary to protect pet owners from retaliatory eviction and to safeguard the health, safety and welfare of tenants who harbor pets* under the circumstances provided herein, *it is hereby found that the enactment of the provisions of this section is necessary to prevent potential hardship and dislocation of tenants within this city"* (emphasis supplied).

At the September 22, 1983 meeting of the Committee on Housing and Buildings of the City Council, its then chairman indicated that the language "has harbored" was included "to make it clear that the legislative intent of this bill is that when it becomes effective that if someone already has had a pet for three months, then that time is frozen and will not be a three-month hiatus during which owners will attempt eviction. It will become a fait accompli on the day that this bill is signed into law". The later report issued by the Legal Services Division of the City Council, concerning the meetings of the Committee on Housing and Buildings, notes that "tenants who currently keep household pets with the landlord's knowledge and have done so for the period of time and under the conditions specified herein, will be afforded the protection of the waiver". Accordingly, our finding that the law is applicable to the instant proceeding, since the landlord had knowledge of the tenant's possession of the dog for six years prior to the commencement of the suit, comports with the evil sought to be remedied by the law. As noted by the Civil Court,

"In the case before this court, we have a tenant who has harbored a small dog *for six years* with the knowledge of the landlord and without any complaints that the dog created a nuisance. The petitioner here has sat on its rights for six years until it finally brought this proceeding to enforce the no-pet covenant for any one of many reasons, probably not related to the dog's existence * * *

"To evict this tenant, after six years of openly living with a dog in these premises, would completely frustrate the intentions of this new law" (*Megalopolis Prop. Assoc. v Buvron,* 121 Misc 2d 662, 664-665, *supra*).

### III

We find no merit to the landlord's contention that giving effect to the new law in the instant proceeding would unconstitutionally impair his preexisting contract rights.

It is well settled that the right to contract is not absolute, and may be interfered with "by subsequent legislation or regulation so long as it is reasonably necessary to further an important public purpose and the measures taken that impair the contract are reasonable and appropriate to effectuate that purpose" (*Crane Neck Assn. v New York City/Long Is. County Servs. Group,* 61 NY2d 154, 167, *cert denied* __ US __, 105 S Ct 60). It is no longer the law that an emergency is necessary to invoke the police power impairing contractual rights. " 'If the state regulation constitutes a substantial impairment, the State, in justification, must have a significant and legitimate public purpose behind the regulation * * * such as the remedying of a broad and general social or economic problem * * * [T]he public purpose need not be addressed to an emergency or temporary situation' " (*Crane Neck Assn. v New York City/Long Is. County Servs. Group, supra,* at p 167, quoting from *Energy Reserves Group v Kansas Power & Light Co.,* 459 US 400, 411-412).

Here, the City Council, in the face of a continuing housing emergency, sought to prevent landlords from using no-pet clauses in leases as a subterfuge to evict tenants who were otherwise in full compliance with their leases. At the September 22, 1983 meeting of the Committee on Housing and Buildings, its then chairman stated that the new law was:

"a landmark bill that provides for the elimination of retaliatory evictions or for evictions designed for purpose of enhancing profits or conversions in co-ops * * * [W]e are not eliminating the landlord's right to enforce a contract that says no pets, but at least the landlord will have to be up front through its agent, superintendent, in saying we are not a pet building, we don't permit pets. If you want to have a pet, we will not welcome you into our building because we will enforce it. If they don't enforce it within the first three months or they wink at it, then the pet is there and cannot be removed.

"So all in all, it is a fair bill and it provides protection for the many thousands of people that already have pets and have had pets for months and years who are lately in jeopardy of being evicted by reason of having these pets and caring for and loving these pets."

Thereafter, at the stated meeting of the City Council on October 13, 1983, prior to its vote on the new law, the then chairman of the Committee on Housing and Buildings reiterated that:

"[I]t is not a bill that says to the landlords that you cannot prevent pets, the landlords can still have a contract that prevents the tenants from having pets.

"What it does say is that you cannot use that pet clause for a retaliatory type of eviction.

"The testimony that we had at various hearings indicates that many of the landlords, in effect, waive these clauses over long periods of time, years, but as soon as the tenants joined a tenant association or spoke up for tenants' rights, they found they were being evicted because they violated the pet clause.

"That is all that we are removing from the relationship between tenant and landlord. It is a law that will be, that if the tenant keeps a pet openly and notoriously for a period of three months and the landlord does nothing or has done nothing, then the tenant [*sic*] will be deemed that the landlord has waived the anti-pet clause and the tenant will be able to keep that pet.

"It does not protect nuisances, where a pet is a nuisance or the pet bothers other tenants or persons or damages property, that pet will not be protected by this bill and the eviction could ensue if that condition is not corrected.

"So I recommend to my colleagues that this is a good bill which eliminates a very pernicious practice by some landlords against tenants at a time when we have a housing emergency, where tenants do not have free mobility to move around and find suitable accommodations".

Thus, it is clear that the enactment of the law was a valid exercise of the City Council's police power, there being no doubt as to the legitimate public purpose behind the law.

Moreover, the retroactive imposition of the automatic waiver against any landlord who had not attempted to enforce a no-pet clause within three months of his learning of the violation of the covenant, is reasonable and appropriate to effectuate the purpose to be achieved by the law.

Thus, the new provision "may not be stricken as unconstitutional even though the means devised to accomplish that result may, to some extent, impair the obligation of the landlord's contract" (*Matter of Farrell v Drew,* 19 NY2d 486, 494).

Parenthetically, we note that the courts have consistently upheld retroactive legislation designed to protect tenants' rights (*see, I.L.F.Y. Co. v Temporary State Hous. Rent Commn.,* 10 NY2d 263, *appeal dismissed* 369 US 795; *420 E. 80th Co. v Chin,* 97 AD2d 390; *Gordon & Gordon v Madavin, Ltd.,* 108 Misc 2d 349, *affd* 85 AD2d 937; *Matter of Attorney-General of State of N. Y. v Katz,* 104 Misc 2d 846). In those cases, retroactivity was considered necessary to prevent landlords from frustrating legislative aims and the measures withstood challenges similar to the instant one.

## IV

We find meritless the landlord's further claim that it should be given the right to maintain the instant proceeding because the pet law sets forth a new Statute of Limitations, warranting a reasonable time for suits to be commenced or continued upon causes of action which previously existed (*see, Rose Towers Realty v Aviv,* 121 Misc 2d 1016, 1027-1028).

## V

In conclusion, since the landlord did not commence the instant proceeding within three months after it gained knowledge of a violation of the no-pet covenant in the tenant's lease, enforcement of that clause is deemed waived pursuant to the Administrative Code of the City of New York § D26-10.10.

We, therefore, reverse the order of the Appellate Term and reinstate the judgment of the Civil Court, which dismissed the instant proceeding.

BROWN, J. P., WEINSTEIN and NIEHOFF, JJ., concur.

Upon appeal by permission, order of the Appellate Term for the Second and Eleventh Judicial Districts, dated June 8, 1984, reversed, on the law, with costs, and judgment of the Civil Court, Queens County, dated November 9, 1983, which dismissed the proceeding, reinstated.

### APPENDIX

Administrative Code of the City of New York § D26-10.10:

"§ D26-10.10 Rights and responsibilities of owners and tenants in relation to pets. — a. Legislative Declaration. The Council hereby finds that the enforcement of covenants contained in multiple dwelling leases which prohibit the harboring of household pets has led to widespread abuses by building owners or their agents, who knowing that a tenant has a pet for an extended period of time, seek to evict the tenant and/or his pet often for reasons unrelated to the creation of a nuisance. Because household pets are kept for reasons of safety and companionship and under the existence of a continuing housing emergency it is necessary to protect pet owners from retaliatory eviction and to safeguard the health, safety and welfare of tenants who harbor pets under the circumstances provided herein, it is hereby found that the enactment of the provisions of this section is necessary to prevent potential hardship and dislocation of tenants within this city.

"b. Where a tenant in a multiple dwelling openly and notoriously for a period of three months or more following taking possession of a unit, harbors or has harbored a household pet or pets, the harboring of which is not prohibited by the multiple dwelling law, the housing maintenance or the health codes of the city of New York or any other applicable law, and the owner or his agent has

knowledge of this fact, and such owner fails within this three month period to commence a summary proceeding or action to enforce a lease provision prohibiting the keeping of such household pets, such lease provision shall be deemed waived.

"c. It shall be unlawful for an owner or his agent, by express terms or otherwise, to restrict a tenant's rights as provided in this section. Any such restriction shall be unenforceable and deemed void as against public policy.

"d. The waiver provision of this section shall not apply where the harboring of a household pet causes damage to the subject premises creates a nuisance or interferes substantially with the health, safety or welfare of other tenants or occupants of the same or adjacent building or structure.

"e. The New York city housing authority shall be exempt from the provisions of this section." (Added by Local Laws, 1983, No. 52 of City of New York, eff Oct. 26, 1983.)[*]

[*]"These provisions shall apply to existing and future leases and renewals".