OPINION OF THE COURT
Joan A. Madden, J.
Petitioner commenced this summary holdover proceeding on the ground that respondents violated their lease by harboring a dog. Petitioner moves for an order granting summary judgment, granting petitioner a hearing to determine the amount of use and occupancy and reasonable attorney’s fees due petitioner, and dismissing and/or severing the defenses and counterclaims set forth in respondent’s answer. Respondent cross-moves for judgment on the pleadings and/or summary judgment, or in the alternative granting a stay pending a hearing and determination by the Division of Housing and Community Renewal (DHCR) on the harassment complaint pending against petitioner, and an award of costs, including reasonable attorneys’ fees. In a separate motion, respondent moves to dismiss the proceeding based on petitioner’s failure to comply with a demand for a bill of particulars. These motions are consolidated for the purpose of disposition.
THE FACTS
The essential facts are not in dispute. Respondents are rent-stabilized tenants at 500 East 85th Street, apartment 19D, New York, New York, pursuant to a written lease. They moved into the apartment in May 1985, and in 1987 they became the owners of a Great Dane named Xam. Petitioner alleges, through an affidavit of its superintendent, that it first learned of the dog in 1988. In October 1994 Xam died, and on December 7, 1994 the respondents obtained a new puppy, Xam II (Twoie). Two days later, by letter dated December 9, 1994, petitioner’s management advised respondents to remove the puppy, as they were in violation of the lease. On January 5, 1995, petitioner served respondents with a notice to cure. Respondents kept Twoie and petitioner served a notice of termination on January 23, 1995. This holdover proceeding was commenced by service of a notice of petition and petition on February 14, 1995. Prior to the commencement of this proceeding, respondents, on February 9, 1995, filed, and DHCR accepted, a harassment *164 complaint alleging, inter alia, that this eviction is retaliatory as respondent Eimicke was "responsible for * * * the development and passage of the laws on succession for rent stabilized apartments” (affidavit of William B. Eimicke, Mar. 19, 1995, para 7). In January 1995, shortly after the November 1994 election, the same month petitioner notified respondents to remove the puppy, respondent Eimicke lost his job as the Director of Housing and Commissioner of the Division of Housing and Community Renewal, which he held under former Governor Cuomo.
DISCUSSION
The residential lease specifically prohibits respondents from harboring a dog and respondents admit they violated that section of the lease.[1] Respondents maintain, however, that the landlord waived the no pet provision pursuant to section 27-2009.1 of the Administrative Code of the City of New York (Pet Law). Under the Pet Law, if the landlord fails to object to an animal within three months after it obtains knowledge of the pet, the no pet provision in the lease is deemed waived.[2]
*165 Petitioner initially argues the respondents misled the superintendent into believing that Xam did not live in the apartment, and that respondents should not be allowed to profit from their misrepresentations. The superintendent states that he spoke to respondent Eimicke when the dog was first observed in 1988, and he was told the dog was housed in respondents’ country house, where respondents spent most of their time. Respondents vehemently deny making any such statement, and petitioner argues that such a factual dispute precludes respondents’ summary judgment motion. However, even if the court were to accept the superintendent’s statements as true, he further acknowledges that "over the subsequent months, it became apparent that the dog was more than occasionally present in the building.” (Affidavit of Istvan Polyak, Mar. 15, 1995, para 6.) Moreover, petitioner’s notice, dated January 5, 1995, reads: "[t]his dog that you are harboring in your apartment has only recently come into the apartment. Prior to that, you had harbored a different dog in your apartment. However, as to the new dog, you neither sought nor obtained the landlord’s permission to harbor and/or keep that dog in your apartment.” Thus, in its notice, petitioner acknowledged it knew Xam lived in respondents’ apartment. Furthermore, it is undisputed that petitioner did not commence proceedings to remove Xam during the approximate eight-year period it was harbored in the apartment.
Petitioner’s argument that respondents’ alleged misrepresentations led it to believe the dog did not live in their apartment for an initial period of time, neither explains nor excuses petitioner’s failure to take any action when it became clear to petitioner that the dog in fact lived in their apartment. Accordingly, as a matter of law, pursuant to section 27-2009.1 of the Administrative Code, this court finds that petitioner waived the no pet provision as to Xam, based on petitioner’s admission it had knowledge that respondents harbored Xam in their apartment for more than three months, and its failure to corn *166 menee a summary proceeding or action.[3] (Compare, Park Holding Co. v Lavigne, 130 Misc 2d 396 [App Term, 1st Dept 1985] [the no pet provision in the lease was not waived even though petitioner failed to commence a timely summary proceeding due to protracted settlement negotiations with the tenant, where petitioner objected to pet almost immediately, and served a notice to cure and notice of termination within the three-month period].)
Petitioner further argues that even if it did not timely object to Xam, it has not waived its right to object to Twoie, asserting that the waiver under the Pet Law is specific to the pet in question and the landlord has a three-month period to object to each successive pet (citing Park Holding Co. v Tzeses, Civ Ct, NY County 1988, Klein, J., affd NYLJ, Apr. 13, 1989, at 22, col 6 [App Term, 1st Dept]; Park Holding Co. v Diamond, NYLJ, Dec. 21, 1994, at 23, col 1 [Civ Ct, NY County, Strauss, J.]). Petitioner’s reliance on these two decisions is misplaced, as each is factually distinguishable from the case at bar. In Park Holding Co. v Tzeses, the Appellate Term, in affirming the dismissal of the petition as untimely, did not address the statement in the trial court’s decision upon which petitioner relies, i.e., that a landlord could object to each successive pet. Thus, the statement, which is the critical issue herein, remains dicta. Similarly, the decision in Park Holding v Diamond (supra) is not on point. In Park Holding, the question in issue was whether a waiver of a no pet clause carried over to a new lease between the parties involving a new apartment and a new pet. While the decision held the waiver was not binding upon a separate and distinct tenancy between the parties, it is factually and legally distinguishable from the facts herein, which involve the same apartment and lease provisions.
Respondents rely upon McCullum v Brotman (NYLJ, May 11,1988, at 14, col 4 [Civ Ct, NY County, Spires, J.]) and Brown v Johnson (139 Misc 2d 195 [Civ Ct, NY County 1988]) to support their position. Based on the decisions therein, respondents argue that once a landlord fails to object to a pet, the no pet lease provision is waived as to future pets, on the grounds that there is no language in the Pet Law which states that the "no *167 pet” clause of a lease is revived, upon the death or removal of a pet which has been harbored in a tenant’s apartment.
While none of the cases cited by either side is controlling authority, this court finds the analysis in Brown and McCullum (supra) more compelling.
Administrative Code § 27-2009.1, in relevant part, provides that the no pet clause of the lease provision "shall be deemed waived”, if the following four requirements are met: (1) the tenant harbors a pet for three months, (2) the harboring is open and notorious, (3) the landlord has knowledge of the harboring, and (4) the landlord fails to initiate proceedings to remove the pet within the three-month window period.
The section is clear and unambiguous. "Where the statute is clear and unambiguous on its face, the legislation must be interpreted as it exists.” (Bender v Jamaica Hosp., 40 NY2d 560, 561 [citations omitted].) Referring specifically to the Pet Law, the Appellate Term has stated "[t]he statutory language should be accorded its ordinary and accepted meaning.” (Park Holding Co. v Tzeses, supra.) The section’s express language provides that once the four requirements are established, the no pet clause is "deemed waived”. The section neither limits the waiver to a specific pet, nor does it provide for the revival of the clause if the pet dies or is removed. (McCullum v Brotman, supra; Brown v Johnson, supra.)
The distinction is the difference between triggering the waiver of the no pet clause and reviving it. While it is clear from the section that harboring a pet without objection for the window period triggers the waiver, the section is devoid of any language and, thus, any justification, for the inference that the clause is revived upon the pet’s removal. To impose such a limitation, or to infer such revival, where neither is supported by the language of the section, is to read into the section a restriction and/or inference where neither exists.
Consequently, this court finds that the plain meaning of the words used in the section is that the no pet clause is waived during the specific tenancy in issue. The waiver is neither limited to the presence of the original pet nor revived upon the pet’s removal or death, and continues with each lease renewal.[4] Consequently, the waiver of the no pet clause as to Xam, due to petitioner’s failure to object under this section during *168 the three-month window period, is applicable to Twoie, based on respondents’ continued tenancy in the same apartment, under the same lease provisions.
This interpretation is consistent with the legislative history of the section as evidenced in the Legislative Declaration, which states that "[t]he council hereby finds that the enforcement of covenants contained in multiple dwelling leases which prohibit the harboring of household pets has led to widespread abuses by building owners or their agents, who, knowing a tenant has a pet for an extended period of time, seek to evict the tenant and/or his pet often for reasons unrelated to the creation of a nuisance.” (Administrative Code § 27-2009.1 [a].) The Declaration further states that the enactment of the provision is necessary "to protect pet owners from retaliatory evictionfs] * * * [and] to prevent potential hardship and dislocation of tenants within this city.”[5]
This concern was reiterated by the chair of the Committee on Housing and Building in the following statement made at a meeting of the Council on October 13, 1983 prior to the Council’s vote on the Pet Law: " '[t]he testimony that we had at various hearings indicates that many of the landlords, in effect, waive these clauses over long periods of time, years, but as soon as the tenants joined a tenant association or spoke up for tenants’ rights, they found they were being evicted because they violated the pet clause.’ ” (As quoted in Megalopolis Prop. v Buvron, 110 AD2d 232, 237 [2d Dept 1985].)
It is clear from the foregoing that the Pet Law was enacted to insure that a pet is not used as a pretextual reason for eviction, when, in reality, the eviction is based on an improper motive, such as retaliation for tenant advocacy or a desire to decontrol or vacate an apartment. Only if the clause is waived for the tenancy in issue, can the objective of the Pet Law, i.e, the prevention of the use of the no pet clause as a pretext for an improper eviction, be achieved. Otherwise, a landlord need *169 only wait for a pet to be replaced to evict a tenant for retaliatory or other unlawful purpose.
In the case at bar, respondents contend that the eviction proceedings are retaliatory in nature due to respondent William B. Eimicke’s involvement in the development of laws on succession for rent-stabilized apartments. While this court reaches no conclusion regarding this contention, as the issue is one of fact properly determined at a trial, if established, it reflects the concerns underlying the Council’s enactment of the Pet Law.
Based on the foregoing, both the express language of the Pet Law and its legislative history and intent confirm the interpretation that once the no pet clause is waived, it is waived for the tenancy in issue.
This court is not unsympathetic to the argument that a tenant’s future pet could be a nuisance, and notes the landlord is not estopped from seeking the removal of such animal, as a nuisance proceeding is specifically not waived under the Pet Law, Administrative Code § 27-2009.1 (d).
Accordingly, petitioner’s motion for summary judgment is denied and respondents’ motion for summary judgment is granted, and the petition is dismissed and counterclaims severed. The remaining motions are denied as moot. The respondents are awarded attorney’s fees as this proceeding is dismissed on the merits. This matter is set down for a hearing to determine attorney’s fees and further proceedings on respondents’ counterclaims and is placed on the Part 18 calendar at 9:30 a.m. on July 31, 1995.

. The lease provides:
"whereas, the tenant has received notice and fully understands that new tenants in the above-mentioned building are not allowed to keep, harbor, or house any dogs, cats, or pets of any kind (’Pets’) in any apartment in said building, irrespective of what the situation may be with any other tenant or tenants currently in the building.
"therefore, the tenant(s) hereby undertakes and agrees to abide by the above prohibition during the entire time the tenant shall occupy the above-captioned apartment. The tenant further agrees that any violation of the above prohibition against Pets shall constitute a default under the lease and that the Landlord shall, in such event be entitled to cancel the lease agreement and any lease extensions and insist that the tenant vacate the apartment. In addition, the tenant will be responsible for all expenses incurred by the Landlord in connection therewith, including legal fees.
"Any change, modification, or waiver of the Agreement shall be ineffective unless in writing and signed by the Landlord or its agent.”

. Section 27-2009.1 of the Administrative Code of the City of New York states:
"a. Legislative declaration * * * Because household pets are kept for reasons of safety and companionship and under the existence of a continuing housing emergency it is necessary to protect pet owners from retaliatory eviction and to safeguard the health, safety, and welfare of tenants who [have] pets under the circumstances provided herein, it is hereby found that the enactment of the provisions of this section is necessary to prevent potential hardship and dislocation of tenants within this City.
"b. Where a tenant in a multiple dwelling openly and notoriously for a period of three months or more following taking possession of a unit, harbors *165 er has harbored a household pet or pets, the harboring of which is not prohibited by the multiple dwelling law, the housing maintenance or the health codes of the city of New York or any other applicable law, the owner or his * * * agent has knowledge of this fact, and such owner fails within this three month period to commence a summary proceeding or action to enforce a lease provision prohibiting the keeping of such household pets, such lease provision shall be deemed waived.”

. Petitioner, relying upon Boston Concessions Group v Criterion Ctr. Corp. (200 AD2d 543, 545 [1st Dept 1994]), argues that under New York law the establishment of a waiver is a question of fact which precludes summary judgment. However, petitioner’s waiver regarding Xam is based on undisputed facts, and, thus, is not a question of fact; it is a waiver by operation of law, pursuant to New York City’s "Pet Law”.

. See Brown v Johnson (supra, at 196) where the court held unenforceable a provision in a renewal lease, which added the language that the no pet clause was "a substantial obligation of the tenancy.” The court reasoned *168 that the Rent Stabilization Code (9 NYCRR 2523.5) requires renewals on the identical terms and prohibits waiver of their protections. Thus, the added language making the clause a "substantial obligation of the tenancy” was unenforceable.

. As indicated in footnote 2, the Legislative Declaration also acknowledges that pets are kept for "safety and companionship " and that the enactment of the provision is necessary to "safeguard the health, safety and welfare of tenants”. This court notes such considerations, given the concern for, and reality of, crime in the City, are of particular significance where a tenant is elderly or lives alone.