OPINION OF THE COURT
Per Curiam.
Order and final judgment dated June 19, 1998 reversed, with $30 costs, and a final judgment of possession is granted in favor of landlord on the holdover petition.
It is undisputed that tenants, in violation of an express condition of their lease, harbored a dog in the apartment premises without landlord’s permission. Civil Court dismissed the holdover petition upon its finding that the lease restriction was waived because landlord failed to commence summary proceedings within three months from the time it learned that tenants were openly and notoriously harboring the dog (Administrative Code of City of NY § 27-2009.1).
We do not agree that landlord or its agents should be charged with knowledge of the animal from September 13, 1996, when tenants allegedly acquired the dog and began walking it in and out of the building on a regular basis. The premises in question is in a complex containing over 1,700 apartments. Particularly in a project of this size, the mere fact that certain unidentified security personnel (employed by an independent agency) or members of the large maintenance staff may have casually observed tenants with their dog from time to time does not equate with a finding that the owner knew or should have known of the dog’s presence from the outset. There was uncontradicted testimony at trial that neither the guards nor porters had any responsibility to report or ferret out unauthorized pets, and their alleged “knowledge” of tenants’ dog does not establish notice to the landlord in these circumstances (Elfin Co. v Gatto, NYLJ, Nov. 26, 1979, at 6, col 1 [App Term, 1st Dept]).
We disagree with the dissent for the following reasons. First, the majority holding is not “contrary to the plain meaning of the statute and its broad remedial purpose” (infra, at 51). The purpose of the Code provision is clearly set forth in the Legislative Declaration.* It is to prevent “widespread abuses” by building owners or their agents who seek to evict a tenant who has *47 harbored a pet “for an. extended period of time” (Administrative Code § 27-2009.1 [a]). These tenants do not fall within the class sought to be protected, since they had the dog only for a short period. Thus, our result actually is consistent with the aim of the City Council and gives effect to its intention (McKinney’s Cons Laws of NY, Book 1, Statutes § 92).
Second, the cases cited in the dissent are readily distinguishable, as in each the finding of waiver was based upon the tenant’s harboring of a dog for an extended period (see, Megalopolis Prop. Assn. v Buvron, 110 AD2d 232 [six years]; Mamaroneck Gardens Realty Partners v Nye, NYLJ, Feb. 7, 1992, at 26, col 1 [several dogs for six to seven years]; Amalgamated Hous. Corp. v Rogers, NYLJ, Aug. 13, 1991, at 21, col 2 [“several years”]). By contrast, the landlord in this case first learned of the dog after approximately two months in November 1996 and asserted its rights promptly. A notice to cure was served on December 2, followed by a notice of termination on December 19 and the commencement of holdover proceedings on or about February 10, 1997. The Code requires the open and notorious harboring of a dog for a period of three months with knowledge of the owner or his agent. No such showing has been made in this case so as to constitute a waiver of the owner’s right to enforce the lease.
Third, the Administrative Code speaks of knowledge of the dog by the “owner or his or her agent” (Administrative Code *48 § 27-2009.1 [b]). The dissent impermissibly enlarges the term “agent” to include anyone employed at the building, when the City Council did not specify servants or employees as persons whose knowledge of the pet would bind an owner. Security personnel who are independently contracted and report only on safety matters, or unionized maintenance personnel in a large complex, should not be viewed as “agents” of the landlord for purposes of waiving lease prohibitions under the Code. These employees would not be reasonably expected to report that they had seen a person walking a dog. Simply put, they would correctly see this as none of their business.
In enacting the “Pet Law,” the City Council sought to prevent landlords from using no-pet clauses in leases as a subterfuge to evict tenants who had harbored pets “for an extended period of time” but who were otherwise in full compliance with their leases (Megalopolis Prop. Assn. v Buvron, 110 AD2d 232, 236, supra). No retaliatory motive is ascribed to the landlord in this case, nor is this a situation where the landlord delayed in enforcing the lease restriction to the tenants’ prejudice. Rather, this is a case where the tenants agreed to a lease with a “no-pet” clause, and now seek to be treated differently from other tenants who are required to comply with this limitation or those who entered into possession in reliance upon the prohibition of pets in the building’s common areas.
Given that section 27-2009.1 is in derogation of otherwise enforceable lease limitations (see, 1036 Park Corp. v Rubin, 92 AD2d 452, affd 59 NY2d 877), it should not be construed in a manner which imposes a type of “waiver trap” upon unwary owners. Since tenants failed to prove by a preponderance of the evidence that landlord waived the applicable no-pet provision or that the provision should be “deemed waived” (Trump Vil. Section 3 v Sinrod, 219 AD2d 590; East Riv. Hous. Corp. v Ierardi, NYLJ, Mar. 3, 1999, at 26, col 1 [App Term, 1st Dept]), the holdover petition is granted.
Issuance of the warrant shall be stayed for 10 days after service of a copy of this order with notice of entry so that tenants may cure the breach of the lease (RPAPL 753 [4]).

 Administrative Code § 27-2009.1 provides, inter alia:
“Rights and responsibilities of owners and tenants in relation to *47 pets. a. Legislative declaration. The council hereby finds that the enforcement of covenants contained in multiple dwelling leases which prohibit the harboring of household pets has led to widespread abuses by building owners or their agents, who knowing that a tenant has a pet for an extended period of time, seek to evict the tenant and/or his or her pet often for reasons unrelated to the creation of a nuisance. Because household pets are kept for reasons of safety and companionship and under the existence of a continuing housing emergency it is necessary to protect pet owners from retaliatory eviction and to safeguard the health, safety and welfare of tenants who harbor pets under the circumstances provided herein, it is hereby found that the enactment of the provisions of this section is necessary to prevent potential hardship and dislocation of tenants within this city.
“b. Where a tenant in a multiple dwelling openly and notoriously for a period of three months or more following taking possession of a unit, harbors or has harbored a household pet or pets, the harboring of which is not prohibited by the multiple dwelling law, the housing maintenance or the health codes of the city of New York or any other applicable law, and the owner or his or her agent has knowledge of this fact, and such owner fails within this three month period to commence a summary proceeding or action to enforce a lease provision prohibiting the keeping of such household pets, such lease provision shall be deemed waived.”